**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Vernon Robert LINDHOLM, Jr.,**
**Defendant–Appellant.**

**No. 92–50737.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1994.

Decided May 5, 1994.

Edward M. Robinson, Law Office of Edward M. Robinson, Redondo Beach, CA, for defendant-appellant.

Steven J. Katzman, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: WIGGINS and G. NELSON, Circuit Judges, and REED, Jr.,* District Judge.

Opinion by Senior District Judge Reed

EDWARD C. REED, Jr., Senior District Judge:

Vernon Robert Lindholm appeals from a conviction in a non-jury trial of three counts of bankruptcy fraud under 18 U.S.C. § 152. The trial court found that appellant chose to file bankruptcy petitions instead of performing on his contractual obligations, that the appellant lacked credibility, that the appellant filed false statements with the bankruptcy court,[1] and that the government proved its case beyond a reasonable doubt. Appellant was sentenced to forty-one months imprisonment on November 23, 1992, under the United States Sentencing Commission, *Guidelines Manual* (Nov. 1992) and ordered to pay restitution totalling $51,172.00 and a special assessment of $150.00. We affirm the judgment of conviction and remand the case to the district court solely for the purpose of resentencing.

---

* The Honorable Edward C. Reed, Jr., Senior United States District Judge, District of Nevada, sitting by designation.

1. Specifically, in connection with each of the petitions for bankruptcy filed by appellant relevant to this case, appellant failed to reveal under penalty of perjury other prior bankruptcy petitions he had filed.

2. Evidence regarding the same type of fraud was committed by the appellant in an incident referred to as the "Halligan matter." The trial court found evidence of this matter to be irrelevant because it involved conduct after the indicted counts. Because the district court did not rely on this information, this court will not consider evidence relating to the Halligan matter in the appeal.

3. Between August 8, 1986 and May 19, 1992 appellant filed six personal bankruptcies and two bankruptcies on behalf of corporations in which he was the principal officer (those entries marked with an asterisk are the petitions relating to the indictment at issue):

## I. FACTS AND PROCEEDINGS BELOW

In 1989 and 1990 appellant entered into two separate agreements to purchase condominiums. The 1989 agreement was made with Lloyd Prell ("Prell") and the 1990 agreement was made with Kirby Larson ("Larson"). In both cases the respective sellers of the properties ultimately filed unlawful detainer actions against appellant.[2] In each case, to avoid eviction, appellant filed petitions for bankruptcy to secure the benefits of the automatic stay provision of 11 U.S.C. § 362. The bankruptcy petitions filed in relation to the agreements are the basis for the three charges of fraud in the indictment.[3]

Appellant entered into an interim occupancy agreement and agreement to purchase a two-unit condominium located in Redondo Beach with Prell in September of 1989. Appellant agreed to take immediate occupancy and to rent the units for $1700.00 a month pending the close of escrow. Appellant's downpayment/security check for $10,000.00 was returned for insufficient funds, his downpayment/security pink slip on a truck was unexecuted, and he failed to make any rental payments. Appellant alleged the condominium was uninhabitable but continued occupancy of the condominium for eight months.

**8/8/86:** Chapter Seven bankruptcy filed by defendant in the name of Emissions Engineering (Vern Lindholm listed as the president).

**10/22/86:** Chapter Seven joint bankruptcy petition filed by defendant in the name of Vernon Robert Lindholm Jr. and Linda Ann Lindholm.

**10/8/88:** Chapter Seven bankruptcy petition filed by defendant in the name of European Auto Care Center, Inc., with Vern Lindholm listed as the president and Linda Lindholm as the Vice President.

**\*1/24/90:** Chapter Seven bankruptcy petition filed by defendant in the name of Vernon Robert Lindholm II (Count I of the Indictment).

**\*4/6/90:** Chapter Seven bankruptcy petition filed in the name of Vernon Robert Lindholm Jr. (Count II of the Indictment).

**\*6/3/91:** Chapter Seven bankruptcy petition filed by defendant in the name of Vernon Robert Lindholm. (Count III of the Indictment).

**4/27/92** and **5/19/92:** Chapter Seven bankruptcy petitions filed by defendant in the name of Vernon Robert Lindholm Jr.

Prell initiated an unlawful detainer action in state court against defendant. The action was then stayed by three Chapter Seven bankruptcy petitions.

The first bankruptcy petition was defendant's joint filing in 1986 and an order was obtained by Prell stating that the bankruptcy did not apply to the property. The second bankruptcy petition was filed on January 24, 1990 (Count One of the Indictment). This bankruptcy proceeding was dismissed on February 20, 1990 for defendant's failure to file a complete petition. The third bankruptcy petition was filed on March 6, 1990 (Count Two of the Indictment). In relation to both the February 20th and March 6th bankruptcy petitions, appellant stated under penalty of perjury (in the information disclosure forms required by Local Rule 104 of the Central District of California) that the only prior bankruptcy petition filed by him or any party/corporation related to him was the petition filed in the name of Emissions Engineering on August 8, 1986.[4]

Ultimately, relief from the automatic stay was obtained by Prell and in April of 1990 appellant was evicted from the property. Prell placed defendant's belongings into storage. Defendant eventually paid the storage costs for the release of his belongings but at no point did Prell receive a settlement payment for his dispute with defendant.

The agreement with Larson, negotiated in February of 1991, was for the purchase of a townhouse being built in Redondo Beach. The purchase price of the property was $1,030,000.00. Appellant alleged that the property did not have a certificate of occupancy; however, as in the case with Prell, he continued occupancy of the property. Appellant lived in the townhouse until Larson filed an unlawful detainer action against appellant. Appellant then filed another bankruptcy petition on June 3, 1991 (Third Count of the Indictment). In connection with this bankruptcy, defendant falsely stated in the Rule 104 form that he had not filed any other prior bankruptcies. Larson moved for dismissal which was denied as was his subsequent motion for relief from stay. Larson

ultimately paid appellant $5,000 so that appellant would vacate the property.

On August 19, 1992 the trial court found defendant guilty on all three counts of the Indictment. Subsequently, on November 23, 1992 the district court judge sentenced appellant.

The United States Probation Office prepared a Presentence Report in preparation for sentencing. The Presentence Report recommended a total offense level of thirteen and a criminal history category of six, for a guideline range of 33–41 months. The offense level calculation was based upon U.S.S.G. § 2F1.1 which provides for a base offense level of six (U.S.S.G. § 2F1.1(a)), an additional five levels for the amount of loss suffered (U.S.S.G. § 2F1.1(b)(1)(F)), and an additional two levels for a scheme which involved more than minimal planning (U.S.S.G. § 2F1.1(2)(A)).

The defendant informed the court there were no factual inaccuracies in the Presentence Report but objected to the calculated offense level and restitution order. The court adopted and accepted the calculation proposed by the probation officer over defendant's objections to the criminal history calculation, the adjustment in the offense level because of the loss suffered by the victims, adjustment in the offense level due to more than minimal planning, and the award of restitution.

Defendant was sentenced to a term of 41 months and restitution in the amount of $9,172 to be paid to Lloyd Prell and $42,000 to be paid to Kirby Larson.

## II. DISCUSSION

■ 1. Did the District Court err in finding that appellant is guilty of bankruptcy fraud due to lack of evidence of materiality and fraudulent intent?

In order to convict defendant of bankruptcy fraud as set forth in the Indictment, the government must prove (1) the existence of the bankruptcy proceedings; (2) that a statement under penalty of perjury was made therein, or in relation thereto; (3) that the statement was made as to a material fact; (4)

4. *See* n. 3 *infra* for list of bankruptcy proceedings filed by appellant.

that the statement was false; and (5) that the statement was knowingly and fraudulently made. *See Metheany v. United States,* 390 F.2d 559, 561 (9th Cir.1968), *cert. denied,* 393 U.S. 824, 89 S.Ct. 81, 21 L.Ed.2d 94 (1968). Appellant argues that appellee failed to prove beyond a reasonable doubt that appellant's false oaths were as to material facts (element No. 3) and that the false oaths were made with fraudulent intent (element No. 5).

## A. Materiality

█ The materiality of a false statement in a bankruptcy case is a question of law. *See United States v. Key,* 859 F.2d 1257, 1261 (7th Cir.1988); *see also Metheany,* 390 F.2d at 561. Thus, the question of materiality is subject to *de novo* review. *See United States v. Clark,* 918 F.2d 843, 845–46 (9th Cir.1990) (materiality of a false statement in perjury prosecution is a question of law subject to *de novo* review).

█ Appellant made false statements regarding his prior bankruptcies.[5] Appellant was required by Local Rule 104 of the United States Bankruptcy Court, Central District of California ("Rule 104") to disclose the existence of prior bankruptcy proceedings and the dispositions thereof in an information disclosure form.

The fact that the statements at issue were promulgated by a local rule is irrelevant. Appellant made statements to the court regarding his bankruptcies that were false. Persons filing for bankruptcy are required to disclose information in order to lawfully and effectively pursue the option of bankruptcy. The fact that defendant's false statements were a violation of the bankruptcy court's administrative rules does not prevent a statement from being considered material. In addition, the fact that the false statements did not ultimately affect the outcome of the bankruptcy process and the fact that appellant asserts that he thought the prior petitions had been dismissed are not persuasive. Appellant was still under a duty to disclose.

█ "Materiality does not require a showing that creditors are harmed by the false statement." *United States v. O'Donnell,* 539 F.2d 1233, 1237–38 (9th Cir.), *cert. denied,* 429 U.S. 960, 97 S.Ct. 386, 50 L.Ed.2d 328 (1976). The scope of materiality includes: (1) matters relating to the extent and nature of the bankrupt's assets; (2) inquiries relating to the bankrupt's business transactions or his estate; (3) matters relating to the discovery of assets (4) the history of a bankrupt's financial transactions; and (5) statements designed to secure adjudication by a particular bankruptcy court. *Id.* at 1237–38.

In *United States v. Phillips,* 606 F.2d 884 (1979) *cert. denied,* 444 U.S. 1024, 100 S.Ct. 685, 62 L.Ed.2d 657 (1980) this court found that a false social security number, the fabrication of prior addresses, and the failure to give past names, are all material statements in that they might mislead creditors as to the identity of the petitioner and might ultimately affect the determination of debtor's eligibility to petition for bankruptcy. *Id.* at 887. Considering the false statements made in the case at hand as material is consistent with this court's prior interpretation of material statements.

*Phillips* made clear:

The term "material matter" refers not only to the main fact which is the subject of inquiry, but also to any fact or circumstance which tends to corroborate or strengthen the proof adduced to establish the main fact.

*Id.* at 886.

Appellant relies on *United States v. Margolis,* 138 F.2d 1002, 1005 (3d Cir.1943) for

---

5. Although appellant claims at the time he signed such statement he was under the impression that his prior bankruptcies had been dismissed, he has also claimed that he is a cum laude graduate of the University of Southern California, that he had attended Western Law School and that he represented himself in both state civil cases and federal bankruptcy court. This cuts against the credibility of the claim that he was under the impression that the prior bankruptcies were dismissed. Moreover, regardless of his belief, appellant was under a duty to disclose all prior bankruptcy filings and their subsequent disposition notwithstanding whether such prior bankruptcies had been dismissed or not. *See United States v. Beery,* 678 F.2d 856 (10th Cir.1982), *cert. denied,* 471 U.S. 1066, 105 S.Ct. 2142, 85 L.Ed.2d 499 (1985) (even if defendant had considered bankruptcy proceeding to be invalid, that would not preclude convicting him of concealing assets from receiver and trustee in bankruptcy).

the contention that his opinion regarding whether or not he had prior bankruptcy actions pending at the time of his subject petitions was not legally relevant to the question of whether his bankruptcy petition would be discharged or dismissed. However, the question regarding prior bankruptcy filings calls for a specific fact, not a legal opinion. In *Margolis* the court held that a false statement regarding ownership of a piece of machinery was not material because the question regarding ownership in the machinery called for the legal opinion of the defendant, which was not pertinent to the inquiry under the circumstances of the case at bar.

Failure to disclose the filing of prior bankruptcy petitions hinders a bankruptcy judge's ability to make an informed and accurate determination of the debtor's purpose for filing the bankruptcy petition as well as the debtor's general status. The purpose of a debtor's filing is relevant in that in the event the bankruptcy is filed for a fraudulent purpose, the bankruptcy judge may sanction the debtor pursuant to 11 U.S.C. 109(g). In addition, statements designed to secure adjudication by a particular bankruptcy court are material. *O'Donnell,* 539 F.2d at 1238.

Prior bankruptcy information was required pursuant to Rule 104 in order to ensure that bankruptcy cases would be properly assigned to the judge assigned to any earlier filed bankruptcy case filed by the debtor (ensuring that all related cases filed within the last six years would be before the same bankruptcy judge). Appellant's strategy of filing false statements with his bankruptcy petitions effectively allows a petitioner to avoid a court with particular knowledge. Furthermore, false statements regarding the existence of other bankruptcy petitions are also material in that a petitioner is entitled to only one discharge every six years and such information should be disclosed in order to determine defendant's eligibility to file bankruptcy and obtain a discharge.[6] 11 U.S.C. § 727(a)(8). Finally, failure to disclose prior bankruptcies could impede an investigation into a debtor's financial affairs (e.g. a credi-

tor). In sum, the misstatements made by the appellant were material.

### B. Fraudulent Intent

■ The issue of whether defendant possessed knowing and fraudulent intent is a question of fact. The appellant's challenge to the sufficiency of the evidence with regard to this element is to be reviewed in the light most favorable to the prosecution for the determination of whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ The government presented evidence which clearly established defendant's knowledge of the false statement. The defendant filed at least eight related bankruptcy cases in less than six years each filed by the defendant in a "pro se" capacity. The court expressly found that the statements were knowingly made.

It is clear from the record that the oaths made by appellant were fraudulently made. Contrary to defendant's assertion, the district court made sufficient findings to sustain defendant's conviction. The number of bankruptcies, the fact that defendant altered his name slightly with each filing, his continued habitation of properties and refusal to make payments while systematically and repetitiously seeking automatic stays demonstrate fraudulent intent. The district court rejected defendant's assertion that he did not act with fraudulent intent, finding a total lack of credibility on the part of the defendant. We will not disturb the credibility determination made by the trier of fact. *See United States v. Boone,* 951 F.2d 1526, 1536 (9th Cir.1991).

Furthermore, the record shows that appellant had the ability to perform on his contracts with Prell and Larson, yet instead chose to file for bankruptcy in each case, that appellant used multiple bankruptcy filings solely for the purpose of staying his evic-

---

**6.** In this case defendant received a discharge of all debts scheduled in his 1986 joint bankruptcy petition on February 7, 1990. Despite the fact that a petitioner is only allowed one discharge every six years, defendant filed four additional bankruptcy petitions subsequent to the date of his discharge. *See supra note 2, at 1081.*

tions, that appellant never paid rent to the victims, and that despite claims of uninhabitability, appellant continued to live on the properties. Failure to disclose prior bankruptcy proceedings was intended to deceive the bankruptcy court and Prell and Larson in order to use the bankruptcy process to live in these properties rent free.

Appellant argues that the false assertions in the Rule 104 statements were not necessary to his purpose of obtaining the automatic stay provisions, to which he felt entitled, under 11 U.S.C. § 362. However, appellant's use of multiple proceedings and multiple stays was improper and plaintiff clearly attempted to wrongfully serve his own interest by presenting facially valid petitions to the bankruptcy court. Most importantly, appellant's conduct was more than willful abuse of the bankruptcy process. Appellant's use of false statements to help effectuate his fraudulent scheme made his actions criminal pursuant 18 U.S.C. § 152.

█ Finally, appellant did not merely make omissions as he claims in filing his bankruptcy petitions. Appellant falsely stated "none" in response to a question regarding prior bankruptcy filings. He also made false statements by selectively listing one previously filed petition and actively omitting to mention the other petitions previously filed. In any event, an omission is the equivalent of a false statement. *See United States v. Irwin,* 654 F.2d. 671, 676 (10th Cir.1981), *cert. denied,* 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982), *overruled on other grounds, United States v. Daily,* 921 F.2d 994 (10th Cir.1991) (in prosecution for false statement to government agency, court held that leaving a blank is equivalent to an answer of none or a statement that no facts are to be reported). The district court made sufficient findings and the record shows

knowing and fraudulent intent on behalf of the appellant.

2. Did the district court err under U.S.S.G. § 2F1.1(b)(1) in increasing the offense level by five levels for losses in excess of $40,000 because appellee failed to prove actual, intended or probable loss?

█ The district court's interpretation of the Sentencing Guidelines is a question of law which is subject to *de novo* review, while factual determinations made in the course of applying the guidelines are reviewed for clear error. *See United States v. Wilson,* 900 F.2d 1350, 1355 (9th Cir.1990).

The district court did not err in increasing the offense level by five levels for losses in excess of $40,000.[7] U.S.S.G. § 2F1.1(b)(1) provides for an increase in the offense level where the amount of loss is greater than $2,000. If there is no evidence of actual loss or the actual loss is less than the intended loss, the loss that the defendants intended to inflict can be used. See § 2F.1.1 Application Note 7; *United States v. Galliano,* 977 F.2d 1350, 1352–53 (9th Cir.1992) *cert. denied,* —— U.S. ——, 113 S.Ct. 1399, 122 L.Ed.2d 772 (1993).

█ The district court found that the uncompensated use of Prell and Larson's property resulted in actual loss to the victims of $9,147 and $42,000, respectively. This calculation was based on evidence regarding the rents and mortgage payments due on the properties. We find no clear error in this calculation. It is not possible to determine the intended loss in this case: appellant apparently was willing to occupy the property of the victims without compensating them for as long as possible. Therefore, the actual loss, rather than the intended loss, was properly used in the calculation. *See U.S.S.G.* § 2F1.1, comment. (n. 7); *see also United States v. Galliano,* 977 F.2d 1350, 1352–53

---

7. Contrary to appellant's contention, the trial court did not violate Fed.R.Crim.P. 32 by failing to make findings as to defendant's allegations regarding the Presentence Report or failing to make determinations that no findings were necessary because the controverted matters were not to be taken into consideration at sentencing. Appellant stated during the sentencing proceeding that there were no factual inaccuracies in the

Presentence Report. There were no disputed facts, merely disputed arguments with regard to the Presentence Report. Rule 32(c)(3)D only applies to factual inaccuracies, not to recommendations, opinions or conclusions not factual in nature. *United States v. Hart,* 922 F.2d 613, 616 (10th Cir.1990); *United States v. Aleman,* 832 F.2d 142, 145 (11th Cir.1987).

(9th Cir.1992) *cert. denied,* —— U.S. ——, 113 S.Ct. 1399, 122 L.Ed.2d 772 (1993). Furthermore, the record does not support appellant's contention that settlements were ever made with Prell and Larson. Appellant made payment to retrieve his property out of storage after his eviction from Prell's property and Larson paid appellant to leave his property so that he could make beneficial use of it. Therefore, we reject his argument that the loss amount is no greater than the amount he allegedly "settled" with the victims. *See United States v. Gallegos,* 975 F.2d 710 (10th Cir.1992).

3. Was the restitution ordered by the district court excessive and improper under the Sentencing Guidelines?

▮ As stated above, the district court's factual determinations made in the course of applying the guidelines are reviewed for clear error.

U.S.S.G. § 5E1.1, entitled "Restitution," provides in pertinent part that: "(a) The court shall—(1) enter a restitution order if such order is authorized under 18 U.S.C. § 3663–3664." "In determining whether to impose an order of restitution, and the amount of restitution, the court shall consider the amount of loss the victim suffered as a result of the offense, the financial resources of the defendant, the financial needs of the defendant and his dependents, and such other factors the court deems appropriate. 18 U.S.C. § 3664(a)." U.S.S.G. § 5E1.1, comment. (backg'd.). The court will not impose restitution with respect to a loss for which the victim has received or is to receive compensation. 18 U.S.C. § 3663.

The record shows that the defendant was financially capable of complying with the order of restitution. The district court based the amount of the restitution award on the victim impact statement of the Presentence Report and by specifically finding that appellant's ability to earn income would support a finding that he would have the ability to make such restitution payments during the period of supervised release.

The Presentence Report found that actual damages totalling in the amount of $51,972 was suffered by the victims. This figure was reached by adding the damages suffered by Prell in the amount of $9,172 (adopting the judgment awarded to Prell by the Torrance Municipal Court) and the damages suffered by Larson in the amount of $42,000 (derived from appellant's failure to make any payment on the $1,030,000.00 purchase agreement and the monthly mortgage payments of $6,000.00 due during the seven months of appellant's occupancy). Appellant's payment for storage cost (of his personal property) and the negotiations between the appellant and the appellees do not constitute settlements. Neither Prell nor Larson received any compensation for the damages suffered by them as a result of defendant's conduct. The district court's restitution order was not clearly erroneous.

4. Did the district court err in imposing two points for "more than minimal planning" under the Sentencing Guidelines?

▮ A district court's determination that a defendant has engaged in more than minimal planning is heavily dependent upon the facts of the case and a clearly erroneous standard of review is applied. *See U.S. v. Mullins,* 992 F.2d 1472, 1479 (9th Cir.) *cert. denied,* —— U.S. ——, 113 S.Ct. 2997, 125 L.Ed.2d 691 (1993).

▮ U.S.S.G. § 2F.1(b)(2) provides for a two level enhancement if the conduct involved more than minimal planning or a scheme to defraud more than one victim. " 'More than minimal planning' means more planning than is typical for commission of the offense in a simple form." U.S.S.G. § 1B1.1 comment, (n. 1(f)). While commission of appellant's crime was simple in the sense that it was effectuated by failing to provide required information on bankruptcy documents, the element of planning was rather sophisticated. In a three year period, defendant entered into two lease/purchase agreements, defaulted on obligations and filed several fraudulent bankruptcies, three of which he was indicted for. The fact that defendant's behavior was repeated and involved an extended period of time implicates appellant's scheme as involving more than minimal planning. U.S.S.G. § 1B1.1, comment (n. 1(f)). Defendant's conduct rose to a level beyond minimal planning

and the district court's two level enhancement will not be disturbed.

5. Should the district court have applied a two point reduction under the Sentencing Guidelines § 3E1.1 for acceptance of responsibility?

■ Appellant contends that he was entitled to a two-point reduction in offense level for accepting responsibility for his crimes. The district court's refusal to grant the reduction was based upon its determination that appellant had not accepted responsibility. We review that determination for clear error. *United States v. Gonzalez*, 897 F.2d 1018, 1019 (9th Cir.1990). Because the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility, the determination of the sentencing judge is entitled to great deference on review. U.S.S.G. § 3E1.1, comment (n. 5).

U.S.S.G. § 3E1.1(a) governs reductions for acceptance of responsibility: "If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels." The guidelines specifically acknowledge that this adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. U.S.S.G. § 3E1.1, comment (n. 2).

At trial appellant attempted to fix blame on the victims he defrauded. Moreover, the central issue of appellant's guilt was over his fraudulent intent—a factual matter. *See United States v. Barron–Rivera*, 922 F.2d 549 (9th Cir.1991). In deciding against granting a reduction for acceptance of responsibility, the district judge commented: "you really feel that you are innocent of the charges although you've been convicted of them already." The district court's determination that appellant did not accept responsibility is not clearly erroneous.

6. Did the district court err in determining appellant's criminal history category since appellant's prior convictions were consolidated for sentencing?

■ The Presentence Report adopted by the trial court assigned eleven criminal list points for appellant's prior state convictions under U.S.S.G. §§ 4A1.1(a) and (b). However, the sentences for three of appellant's prior convictions were vacated and then consolidated for sentencing (cases C56667, 56668 and C68748).

According to the U.S.S.G. § 4A1.2(a), prior sentences imposed in "related cases" are to be treated as one sentence for the purposes of sections 4A1.1(a), (b) and (c). Prior sentences are considered "related" if they resulted from offenses that were consolidated for sentencing. U.S.S.G. § 4A1.1, comment (n. 3).

The district court treated each of these three convictions separately on the basis that the cases were separated by an intervening arrest. Pursuant to U.S.S.G. § 4A1.2, comment (n. 3), prior sentences are not considered related if they were for offenses that were separated by an intervening arrest. This language was added to the Application Notes effective November 1, 1991. The three offenses at issue were offenses committed prior to November 1, 1991.

■ Generally a district court is to apply the version of the Sentencing Guidelines in effect on the date of sentencing. *United States v. Mooneyham*, 938 F.2d 139, 140 (9th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 443, 116 L.Ed.2d 461 (1991). However, in *United States v. Bishop*, 1 F.3d 910 (9th Cir.1993) this court held that the guidelines application note regarding the effect of intervening arrests on consolidation should not be given retroactive effect.[8] Thus, under the holding of *Bishop*, three of appellant's prior convictions should have been treated as one offense in calculating the criminal history score because the offenses were procedurally consolidated for resentencing. Such consolidation may result in a criminal history score that underrepresents the seriousness of appellant's criminal history and the danger he

---

**8.** The district court in this case did not have the benefit of *Bishop* at the time appellant was sentenced.

represents to the public. *See* U.S.S.G. § 4A1.2, comment. (n. 3). If such is the result of the consolidation, an upward departure may be warranted.

This case should be remanded to the district court for the purposes of recalculating appellant's criminal history score.

## III. CONCLUSION

The judgment of conviction is affirmed. However, the sentence imposed is vacated and the case is remanded to the district court solely for the purpose of resentencing.

AFFIRMED, VACATED IN PART and REMANDED.