46 F.3d 1147
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Victoria A. MacDONALD, Defendant-Appellant.
 No. 94-30099.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted: Jan. 13, 1995.
Decided: Jan. 31, 1995.
 
 Before: PREGERSON and TROTT, Circuit Judges, and FITZGERALD,* Senior District Judge.
 MEMORANDUM**
 Victoria A. MacDonald appeals her jury conviction and sentence imposed under the Sentencing Guidelines for mail fraud and making false statements to the Department of Housing and Urban Development ("HUD") in violation of 18 U.S.C. Secs.1341 and 1001. We have jurisdiction over this timely appeal under 18 U.S.C. Sec. 3742 and 28 U.S.C. Sec. 1291. We affirm.
 I. BACKGROUND
 Victoria MacDonald and her husband, Arthur J. MacDonald operated a corporation known as Rainport Properties, Ltd. ("Rainport") during the years of 1988 and 1989. Rainport was engaged in the business of purchasing, reselling, and managing residential real property in the Portland, Oregon metropolitan area. In prior years, the MacDonalds were engaged in a similar business known as the MacDonald Creative Development Corporation ("MCDC").[1] Arthur MacDonald was the founder, president, and operator of both businesses while Victoria MacDonald was Secretary/Treasurer and agent/representative of the businesses.
 The MacDonalds were found guilty by a jury of operating a scheme to defraud through Rainport and MCDC. The scheme involved purchasing residential property for a promissory note and then simultaneously reselling the property to investors who obtained federally insured mortgages through HUD. Rather than using the mortgage proceeds to pay the promissory notes, the jury found the MacDonalds pocketed the money. Succinctly put, at the end of transactions, the property contained two encumbrances and the sellers, the investors, and HUD, were each deceived.
 Rainport operated by offering to purchase properties by making a small down payment to the sellers and then financing the balance with a promissory note paying monthly interest at 9% per annum and a single principal balloon payment in ten years. Sellers were told that the promissory note would be secured by a trust deed on the property, executed in favor of the seller and recorded with county authorities outside of escrow. This left the sellers with the impression that they were fully secured on the note for the full value of their property.
 In fact, the promissory notes were never recorded. Instead, the MacDonalds resold the properties to investors without notifying the original sellers. The investors were recruited by Arthur MacDonald with promises that they could purchase property for no money down, that he would manage the rental property, and that the investors would receive income tax benefits from the rentals. The investors purchased 41 homes through the MacDonalds from 1984 through 1989.
 The MacDonalds instructed and assisted the investors in obtaining federally insured loans through HUD. In order to obtain federally insured loans, HUD required that downpayments be made from the buyer's own funds, that the mortgage not exceed 85% of the property's value, and that the seller certify that there were no encumbrances on the property. The MacDonalds violated these requirements and then deceived HUD when questioned. Victoria MacDonald would provide the investors with a cashier's check payable to them for use as the down payment. She would met the investors at a bank, hand them a check, and witness them purchase a cashier's check in the same amount payable to MCDC or Rainport for the down payment. The MacDonalds instructed the investors to lie to HUD regarding the actual source of funds for the down payment and to sign false loan documents misrepresenting the source of these funds. The MacDonalds also failed to disclose to HUD that the properties to be purchased were encumbered by promissory notes payable to the original sellers.
 The transactions were conducted quickly. After the down payment (taken from the HUD loan proceeds) was given to the original sellers, the balance was deposited in MCDC and Rainport business bank accounts controlled by Victoria MacDonald.
 After the HUD loans cleared, the MacDonalds created fake second trust deeds between the investors and sellers. These deeds obligated the investors to the sellers for the entire balance of the promissory notes that MCDC and Rainport previously executed. Investors were unaware that they became obligated to pay the MCDC/Rainport notes to the sellers.
 MCDC and Rainport managed the rental of these properties for the investors. Victoria MacDonald had authority over disbursements: she would decide whether to make payments to the first or second mortgages. In most instances, the rental income barely covered the first mortgage payments to the HUD insured lenders. The majority of the second note holders, i.e., the sellers, never received their monthly interest payments or any principal payments. Complaints were handled by Victoria MacDonald who provided a variety of excuses for late interest payments.
 The Oregon Department of Justice began a civil investigation of Rainport and MCDC in May, 1987. Sometime later, the case was referred to the FBI.
 
 
 1
 A third superseding indictment was returned on September 22, 1993. It charged Arthur J. MacDonald and Victoria A. McDonald d/b/a Rainport Properties, Ltd., in Counts 1 through 7 with mail fraud in violation of 18 U.S.C. 1341, and in Counts 8 through 12 with making false statements to the Department of Housing and Urban Development, and aiding and abetting, in violation of 18 U.S.C. Secs. 1001 and 2.
 
 
 2
 The jury trial began on September 28, 1993, and concluded on October 13, 1993, with the jury returning guilty verdicts on all twelve counts against Arthur J. MacDonald and against Victoria A. MacDonald on three of the seven mail fraud charges and all five of the false statement charges. Tragically, Arthur J. MacDonald committed suicide on October 13, 1993.
 
 
 3
 On March 7, 1994, the district court sentenced Victoria A. MacDonald to twenty-seven months imprisonment and a three-year term of supervised release.
 
 II. ANALYSIS
 
 4
 On appeal, Victoria MacDonald makes several arguments. First, that the district court erred in denying her motion for judgment of acquittal based on insufficient evidence. Second, that the district court erred in denying her motion for a new trial on the ground that jurors may have considered punishment during deliberations. Third, MacDonald claims the district court erred in determining the amount of loss for her base offense level. Fourth, that the district court erred in granting a two-point enhancement for doing more than minimal planning. And fifth, that the district court erred in not awarding a two-point downward departure for acceptance of responsibility.
 
 A. Denial of Judgment of Acquittal
 
 5
 We review de novo the legal determination whether a verdict may be upset because it is inconsistent with an acquittal. United States v. Hart, 963 F.2d 1278, 1280 (9th Cir. 1992). The test to be applied is the same as a challenge to the sufficiency of the evidence. United States v. Lessard, 17 F.3d 303, 304 (9th Cir. 1994). Consequently, this court must review the evidence presented against the defendant in a light most favorable to the government to determine whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."' United States v. Shirley, 884 F.2d 1130, 1134 (9th Cir. 1989) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original).
 
 
 6
 MacDonald contends there was insufficient proof of intent to defraud under the mail fraud statute and to deceive under the false statement statute. "Conviction under the mail fraud statute requires proof of two elements: (1) existence of a scheme to defraud, and (2) 'using or causing the use of the mails in furtherance of the scheme."' United States v. Stein, 37 F.3d 1407, 1408-09 (9th Cir. 1994). Similarly, "[t]o willfully make a false statement in violation of 18 U.S.C. Sec. 1001, the defendant must have the specific intent to make a false statement." United States v. Heuer, 4 F.3d 723, 732 (9th Cir. 1993), cert. denied, 114 S. Ct. 1190 (1994) (citations omitted).
 
 
 7
 MacDonald concedes that the government proved beyond a reasonable doubt the existence of a scheme to defraud sellers, investors, and HUD, but denies any knowledge of the scheme and claims she unwittingly followed her husband's directions.
 
 
 8
 The evidence at trial established that Victoria MacDonald played an important role in the ongoing management of the business. She knew the sellers would not be paid, that properties were double-encumbered, and that HUD was deceived. She was Secretary/Treasurer of MCDC and Rainport. Employees testified that she opened all the mail, handled billing receipts, had sole access to bank accounts, signed all the checks, did payroll, and compiled tax information. She also was involved in property transactions and the accompanying misrepresentations. She informed investors of property availability and instructed them to lie to HUD. She had investors sign a blank deed, which she would fill in, then type "second" before "trust deed" and mail it to the original seller. She fielded complaints from the sellers. Her common response was to either ignore complaints or assure that payment was coming. Given this information, a rationale trier of fact could conclude beyond a reasonable doubt that MacDonald was aware of a scheme and had the specific intent to defraud the investors, sellers, and HUD and that she intentionally participated in the scheme. We find sufficient evidence to sustain the verdict for both the mail fraud and making false statements.
 
 B. Denial of Motion for a New Trial
 
 9
 We review the district court's decision not to grant a motion for a new trial under Fed. R. Crim. P. 33 and its decision not to hold a hearing for an abuse of discretion. United States v. Navarro-Garcia, 926 F.2d 818, 822 (9th Cir. 1991).
 
 
 10
 MacDonald contends that she is entitled to a new trial, pursuant to Fed. R. Crim. P. 33, because the jurors considered punishment during deliberations. She claims this may constitute extrinsic evidence affecting the verdict. Alternatively, she claims the district court abused its discretion by failing to hold an evidentiary hearing on the issue.
 
 
 11
 Upon learning of Arthur MacDonald's suicide, a juror named Swanson wrote to Arthur MacDonald's attorney and stated that she believed both defendants were guilty but that she would have "held out" for a hung jury if she had known the defendants would receive a punishment greater than a fine. Swanson then stated that the "hung jury" idea was not so good because it resulted in additional expenses for the MacDonalds. Victoria MacDonald filed a motion for a new trial based on the contents of this letter. On November 24, 1993, the district judge denied MacDonald's motion without a hearing. On January 24, 1994, Victoria MacDonald filed a motion for reconsideration of the court's order denying her motion for a new trial based on a second letter from Swanson and other jurors. In this letter Swanson stated there was no extrinsic evidence in the jury room during deliberations, that punishment was never discussed, that the notion of "fines" as punishment was strictly her own, and that her concern about attorney's fees was based upon personal experience. Other jurors stated that they believed Victoria MacDonald was involved in the scheme, but that her level of involvement was difficult to discern because of her lack of testimony. The jurors also expressed remorse for Arthur MacDonald's suicide.
 
 
 12
 The district court found these letters constituted mere mental processes and were thus excluded under Fed. R. Evid. 606(b) and did not require an evidentiary hearing. The court stated that the "general assumptions of the jurors, their common experiences, their personal experiences, and their thought processes are appropriate factors in the deliberative process and do not constitute 'extrinsic' evidence" and cited United States v. Navarro-Garcia, 926 F.2d 818, 821-22 (9th Cir. 1991). The court concluded that there was no evidence of extrinsic evidence, that jury followed the instructions, which included an instruction not to consider punishment, and that there was no basis for the court to award a new trial.
 
 
 13
 We agree with the district court's analysis. "Jurors may not impeach their own verdict." United States v. Weiner, 578 F.2d 757, 764 (9th Cir.), cert. denied, 439 U.S. 981 (1978); see also Fed. R. Evid. 606(b); United States v. Williams, 990 F.2d 507, 513 (9th Cir.) (after jury is polled and discharged, individual juror cannot retract assent to verdict), cert. denied, 114 S. Ct. 333 (1993). There is no evidence that punishment or attorneys fees was ever discussed by the jury. The district court did not err in refusing to undertake an evidentiary hearing.
 
 C. Sentencing Issues
 
 14
 We review the district court's interpretation and application of the Sentencing Guidelines de novo. United States v. Buenrostro-Torres, 24 F.3d 1173, 1174 (9th Cir. 1994). We review the sentence under the 1993 Guidelines, which were in effect at the time Victoria MacDonald was sentenced. We review factual findings made in the sentencing phase for clear error. Id.
 
 
 15
 1. Determination of the Amount of Loss Due to Fraud
 
 
 16
 MacDonald contends that the court improperly computed the amount of the loss attributable to her under U.S.S.G. Sec. 2F1.1(b)(1)(M) which provides for a 12 level increase if the amount of the loss exceeds $1,500,000. The court found that the government proved a loss of $1,571,983.65. This sum was reached by adding the losses HUD incurred in foreclosing on eight of the properties ($169,727.69) with the total of the notes issued to the 38 sellers minus the amount the sellers were paid ($1,402,255.76) to total $1,571,983.65.[2]
 
 
 17
 MacDonald maintains that she was held liable for losses attributable to acquitted conduct. The acquitted charges (Counts 1, 2, 5, and 6) relate to two properties. The total losses attributed to those properties is $59,000. However, because Counts 3 and 7 relate to these properties, and for that reason, the government argues, it included them. The point is moot, however, even if we give MacDonald credit for the $59,000, the loss still exceeds $1,500,000. "[T]he loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information." U.S.S.G. Sec. 2F1.1, Application Note 8.
 
 
 18
 Additionally, MacDonald claims that there were no "actual" losses and that because she did not intend to cause a loss, the correct figure for the total loss should be zero. Here, the government proved the amount of the loss for the eight properties HUD foreclosed upon. We can also conclude the actual monetary loss to a victim is an appropriate basis for a guideline computation. U.S.S.G. Sec. 2F1.1, Application Note 7(b); see, United States v. Shaw, 3 F.3d 311, 312-13 (9th Cir. 1993). The figure $1,402,255.76 represents the sum the sellers lost in equity. MacDonald counters with arguments that in some cases, the balloon payments are not yet due, and in any event, she fully intended to pay the sellers for their total lost equity. The district court correctly rejected these claims given that the double-mortgaging of the properties left the MacDonald's hopelessly unable to repay any of the seller's equity. These losses are attributable to Victoria MacDonald under both an aiding and abetting theory and as foreseeable conduct of a codefendant.
 
 2. Minimal Planning Enhancement
 
 19
 United States Sentencing Guidelines section 2F1.1(b)(2) provides that "[i]f the offense involved (A) more than minimal planning, or (B) a scheme to defraud more than one victim, increase by 2 levels." MacDonald contends that court erred when it relied upon part (A) for the determination that Victoria MacDonald's offense constituted something more than "minimal planning." Application note 1(f) states to section 1B1.1 of the Guidelines "'[m]ore than minimal planning' is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune. Consequently, this adjustment will apply especially frequently in property offenses." The district court was not clearly erroneous when it determined from the facts that Victoria MacDonald's conduct required something more than "minimal planning." See United States v. Lindholm, 24 F.3d 1078, 1086 (9th Cir. 1994). Additionally, it is not disputed that the scheme to defraud involved more than one victim. This enhancement is also appropriate under subpart (B). We will not disturb the district court's two level enhancement under section 2F1.1(b)(2) of the Guidelines.
 
 3. Acceptance of Responsibility
 
 20
 MacDonald contends that the district court erred when it found no basis for a two-level acceptance of responsibility reduction under U.S.S.G. Sec. 3E1.1. We review for clear error a finding that the defendant did not accept responsibility. United States v. McKinney, 15 F.3d 849, 852 n.6 (9th Cir. 1994).
 
 
 21
 Victoria MacDonald stated remorse and shame for her actions and stated she wished she could pay back the sellers at her sentencing. At the same time, she has maintained her innocence and has stated on appeal that she had no intent to deceive. Generally, the sentencing judge is in a "unique position to evaluate the defendant's acceptance of responsibility," and we therefore afford the district court great deference on the issue. United States v. Gonzalez, 897 F.2d 1018, 1019 (9th Cir. 1990). The reduction is not generally available to a defendant who put the government to its burden of proof at trial and denies the essential elements of the offense. Lindholm, 24 F.3d at 1087, citing U.S.S.G. Sec. 3E1.1, comment (n.2). The district court's determination that MacDonald did not accept responsibility is not clearly erroneous.
 
 III. Conclusion
 
 22
 The judgment of conviction and sentence are AFFIRMED.
 
 
 
 *
 The Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 At various times, the MacDonalds operated the Oregon Development Corporation and the Oregon Real Estate Investors Corporation. These entities were engaged in activity quite similar to Rainport and MCDC
 
 
 [2]
 Actually, the government accountant found the total to be $1,572,065.45, though this makes no difference under the Guidelines