59 F.3d 177
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
David STRAUCH, Defendant-Appellant.
 No. 94-10195.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 10, 1995.*
Decided June 23, 1995.
 
 Before: CHOY, POOLE and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Strauch challenges his conviction after a jury trial of two counts of bankruptcy fraud. We affirm.[1]
 
 18 U.S.C. Sec. 152 provides:
 
 3
 Whoever knowingly and fraudulently conceals from the custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or from creditors in any case under title 11, any property belonging to the estate of a debtor; or
 
 
 4
 Whoever knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11;
 
 
 5
 * * *
 
 
 6
 Shall be fined not more than $5,000 or imprisoned not more than five years, or both.
 
 
 7
 Count One of the superseding indictment alleged that, between December 19 and December 28, 1990, Strauch "knowingly and fraudulently conceal[ed] from the creditors of 3-D Microsystems, including I.T.T., property belonging to the estate of 3-D ..." by removing inventory from 3-D's stores and concealing the inventory in mini-storage facilities.
 
 Strauch testified as follows at trial:
 
 8
 Q. At the time you started removing the inventory from your store on December 22nd, was it your belief that ITT had a right to possess that inventory, or was it your belief that they did not have a right?
 
 
 9
 A. I believe they had the right to obtain the value of the inventory.
 
 
 10
 Q. Does that - - what was that belief based on?
 
 
 11
 A. It was based on the fact that I owed them $330,000.
 
 
 12
 Q. And they were entitled to the value of that inventory, you say?
 
 
 13
 A. Yes.
 
 
 14
 * * *
 
 
 15
 Q. How long did it take you to hide all this inventory?
 
 
 16
 A. About a day and a half maybe.
 
 
 17
 Q. And you put it first at a storage location at Bradshaw?
 
 
 18
 A. It was called the Mini Storage off Bradshaw.
 
 
 19
 Q. And you claim it was rented under the name of Steven Greenberg, one of your salesmen?
 
 
 20
 A. That is correct.
 
 
 21
 Q. You did that so that if ITT were looking for any storage names, they wouldn't find it, correct?
 
 
 22
 A. That is correct.
 
 
 23
 Q. And you paid the rent on that location, correct?
 
 
 24
 A. I believe I did, yes.
 
 
 25
 Q. And then you moved that inventory again to another location at Derrel's, correct?
 
 
 26
 A. Yes, myself and three other individuals.
 
 
 27
 Q. That was even further away from ITT. You rented it under someone else's name, again so ITT couldn't find it, correct?
 
 
 28
 A. Yes. We did not want ITT to find it.
 
 
 29
 * * *
 
 
 30
 Q. So it is your testimony you wanted to maximize the value of that inventory to benefit ITT, so you decided to benefit ITT by hiding it from them, is that right?
 
 
 31
 A. I knew they couldn't get the maximum value for that inventory, yes.
 
 
 32
 [R.T. 541-43]
 
 
 33
 A former employee and self-described friend of Strauch's offered this testimony:
 
 
 34
 Q. All right. Then on the occasion Mr. Strauch called you during Christmas break, what did he tell you?
 
 
 35
 A. To come on down and help him move some of the equipment.
 
 
 36
 Q. Did he tell you why he wanted the equipment moved?
 
 
 37
 A. As far as I know, so ITT wouldn't get it.
 
 
 38
 Q. What did you do in response to his request?
 
 
 39
 A. I came down and helped him move it.
 
 
 40
 * * *
 
 
 41
 Q. Okay. And where did you - - what was removed from the store?
 
 
 42
 A. Computer equipment and stuff.
 
 
 43
 Q. Where was it moved to?
 
 
 44
 A. Storage shed over on Bradshaw.
 
 
 45
 * * *
 
 
 46
 Q. Did you observe [Strauch] also moving equipment to the Bradshaw location?
 
 
 47
 A. Yes.
 
 
 48
 [R.T. 198-200]
 
 
 49
 Former FBI agent Manuel Pereira offered the following:
 
 
 50
 Q. Did you question him as to the concealment of the inventory?
 
 
 51
 A. Yes, I did.
 
 
 52
 * * *
 
 
 53
 Q. Did he say why he did this?
 
 
 54
 A. Well, he explained to me that he did not want his prior creditor, which was ITT, to get their hands on the inventory.
 
 
 55
 [R.T. 395]
 
 
 56
 Count Two of the superseding indictment alleged that Strauch "knowingly and fraudulently failed to declare [in the bankruptcy petition] the claims against the debtor 3-D Microsystems, Inc., held by Microage Computers, Inc. and Compaq Computers, Inc." At trial, Strauch testified:
 
 
 57
 Q. You knew at the time you signed the bankruptcy petition that those two creditors were not declared in that petition, is that correct?
 
 
 58
 A. Yes, that's correct.
 
 
 59
 Q. And the reason you did not list them, as you told Mr. Riordan and Mr. Pereira, is that you didn't want to let those two creditors know you were in bankruptcy, correct?
 
 
 60
 That was the financial reason for your not listing them, correct, your business reason?
 
 
 61
 A. The financial reason?
 
 
 62
 Q. Yes.
 
 
 63
 A. We had planned to pay them off as part of an overall plan.
 
 
 64
 Q. But the business reason is that you did not want to let those two creditors know you had filed bankruptcy, correct?
 
 
 65
 A. Correct.
 
 
 66
 [R.T. 521-22]
 
 
 67
 The bankruptcy trustee, James Riordan testified:
 
 
 68
 Q. Are the companies Compaq Computers or Microage Computers listed on that creditors matrix?
 
 
 69
 A. No, they're not.
 
 
 70
 Q. Did you have any occasion to discuss with David Strauch why he left off Microage and Compaq?
 
 
 71
 A. Well, yes, I did. The reason I was given is that he wanted to continue doing business with them, and there are provisions in the contracts of both Compaq and Microage that if you went into bankruptcy, both - - or that the contracts were automatically voided.
 
 
 72
 Q. Is that what the defendant explained to you?
 
 
 73
 A. Yes.
 
 
 74
 [R.T. 332]
 
 Former FBI agent Pereira testified:
 
 75
 Q. Did you have occasion to question him as to why certain creditors were left off the petition?
 
 
 76
 A. Yes, I did. I asked Mr. Strauch why certain creditors were left off the petition, and he responded to me that he was trying to keep some of the big players in the industry from learning of his bankruptcy.
 
 
 77
 [R.T. 394]
 
 
 78
 Despite the overwhelming evidence supporting Strauch's conviction, Strauch now argues (1) that there was a fatal variance between the indictment and the proof at trial, and (2) that the evidence was insufficient to support his conviction. "The standard of review on both issues is the substantial evidence test: whether, when the evidence is viewed in the light most favorable to the government, a reasonable jury could find the defendant[ ] guilty beyond a reasonable doubt of each essential element of the crime charged." United States v. Universal Trade and Industries, Inc., 695 F.2d 1151, 1153 (9th Cir. 1983).
 
 
 79
 A. Variance Between Indictment and Proof at Trial
 
 
 80
 Strauch argues that there was a variance between the indictment and the evidence presented, which deprived him of a fair trial. He did not raise this argument below, and so we review for plain error. United States v. Hayden, 860 F.2d 1483, 1485 (9th Cir. 1988); United States v. Anderson, 39 F.3d 331, 347 (D.C. Cir. 1994); United States v. Neely, 980 F.2d 1074, 1093 (7th Cir. 1992). "Plain error is error that is clear under the law and that affects substantial rights." United States v. Campbell, 42 F.3d 1199, 1204 (9th Cir. 1994). This court exercises its discretion to correct a plain error "only if a miscarriage of justice would otherwise result." United States v. Segura-Gallegos, 41 F.3d 1266, 1271 (9th Cir. 1994), citing United States v. Olano, 113 S. Ct. 1770, 1778-79 (1993). No error exists here, plain or otherwise.
 
 
 81
 Whereas the indictment is amended when the "evidence supports a crime other than that charged," a variance occurs when the charging terms of the indictment are left unaltered but "different evidence supports the charged crime." United States v. Pisello, 877 F.2d 762, 765 (9th Cir. 1989); United States v. Von Stoll, 726 F.2d 584, 586 (9th Cir. 1984). "[N]ot every variance is fatal to an indictment. The substantial rights of the defendant must be affected." United States v. Bolzer, 556 F.2d 948, 950 (9th Cir. 1977).
 
 
 82
 A variance does not affect the substantial rights of the accused if (1) the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or unfairly surprised at trial and (2) if the variance is not such that it will deprive the defendant of his protection from reprosecution for the same offense.
 
 
 83
 United States v. Anton, 547 F.2d 493, 496 (9th Cir. 1976). "Where ... the alleged variance does not have any of those effects it should not serve as a grounds [sic] for reversal." United States v. Anderson, 532 F.2d 1218, 1227 (9th Cir.), cert. denied, 429 U.S. 839 (1976).
 
 
 84
 Strauch offers two theories of variance. He first argues that the indictment alleged that he concealed property from creditors, but the proof at trial showed that the concealment was from the bankruptcy trustee, not the creditors.[2] However, as is clear from the portions of the record quoted above, the evidence that Strauch intentionally concealed property from ITT, and as a result from other creditors, was overwhelming. The bankruptcy trustee did testify that Strauch's concealment continued after the trustee's appointment:
 
 
 85
 Q. Did you have occasion to confront David Strauch with your discovery of the Derrel's location?
 
 
 86
 A. I believe it was the next day, yes.
 
 
 87
 Q. Did you have a conversation with him concerning your discovery?
 
 
 88
 A. Yes, I did.
 
 
 89
 Q. What was the nature of the conversation on that occasion?
 
 
 90
 A. I asked him why he lied to me and hid the inventory when I clearly asked him and told him it was my duty to gather any and all inventory, and asked him why he lied to me.
 
 
 91
 Q. And did he say why he lied to you?
 
 
 92
 A. There was actually a couple of reasons that he gave me. One was that his attorney, Wayne Harbager, had hinted that he should move it and hide it from ITT, and either in that conversation or subsequent ones he told me that he was hiding it so that he could sell it before ITT could take it back.
 
 
 93
 [R.T. 320-21]
 
 
 94
 However, there was sufficient evidence that Strauch concealed property from creditors between December 19 and December 28, as alleged in the indictment, to allow a rational jury to convict. "Convictions generally have been sustained as long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictment." United States v. Miller, 471 U.S. 130, 136 (1985). The trustee's testimony corresponded to and buttressed the concealment charge set out in the indictment, and did not constitute a variance.
 
 
 95
 Strauch has a second theory of variance. He claims that the government went "outside the indictment" when it introduced deposition testimony in which Strauch lied about his knowledge of the missing inventory. This is but a sampling of his dissimulation:
 
 
 96
 Question: Do you know where these items of inventory are right now?
 
 
 97
 Answer: No, I don't.
 
 
 98
 Question: Do you know who took them?
 
 
 99
 Answer: No, I don't.
 
 
 100
 Question: Have you reported them stolen?
 
 
 101
 Answer: I don't think they were stolen.
 
 
 102
 * * *
 
 
 103
 Question: Well, who removed them?
 
 
 104
 Answer: I don't know.
 
 
 105
 Question: And you don't know where they are?
 
 
 106
 Answer: I don't know where they are.
 
 
 107
 [R.T. 278-79] Strauch admitted at trial that he lied during the deposition. [R.T. 550]
 
 
 108
 Strauch's claim of a variance implicating his substantial rights is undermined by the fact that he and his attorney stipulated before trial that "the government may read into evidence selected portions of the deposition transcript of the defendant, David Strauch, taken January 15, 1991 ...." [R.T. 274-75] Moreover, the deposition evidence was not a variance, let alone a fatal one. It was proof corresponding to and bolstering the offense charged in the indictment, Miller, 471 U.S. at 136, and tended to show that Strauch's concealment from ITT was knowing and fraudulent. It also served to impeach Strauch's credibility.
 
 
 109
 Strauch's argument that there was a fatal variance between the indictment and the proof presented at trial fails. He has not shown a variance, let alone an impairment of his substantial rights or a miscarriage of justice constituting plain error.
 
 B. Sufficiency of the Evidence
 
 110
 Strauch also argues that, for various reasons, the evidence was insufficient to sustain his conviction.
 
 1. Count One
 
 111
 Strauch argues that the government did not prove that the inventory he concealed was "property belonging to the estate of a debtor," as required by the language of Sec. 152. He offers two theories to support this claim. The first is that the inventory belonged to ITT because "ITT held all legal and equitable interest in property of 3-D as a perfected security interest on and after January 7, 1991" (the date on which ITT was granted a relief from stay of bankruptcy allowing it to take immediate possession of 3-D's inventory) such that there was no property of the estate to be concealed "continuously, from a trustee." See Appellant's Opening Brief at 22, 24 (emphasis in original). He adds that "none of the inventory had been concealed since everyone knew that defendant disclosed the existence of the inventory. Defendant would not reveal where he had taken it ...." See Appellant's Opening Brief at 23.
 
 
 112
 This theory fails for several reasons. First, the interest ITT had in the inventory as of January is not relevant to the allegation that Strauch concealed property from creditors in December. Also, Strauch is mistaken in his implication that the property must be concealed "from a trustee"; the statute criminalizes concealment from creditors as well. Furthermore, "[t]he property of the debtor's estate includes property in which a creditor has a security interest." In re Contractors Equip. Supply Co. (Dewhurst v. Citibank (Arizona)), 861 F.2d 241, 244, citing United States v. Whiting Pools, Inc., 462 U.S. 198, 203 (1983) and 11 U.S.C. Sec. 541(a)(1). Strauch's argument that he did not conceal the inventory because he disclosed its existence but not its location is frivolous, in light of his own testimony.
 
 
 113
 Strauch's second theory is that 3-D held the inventory in trust for ITT pursuant to financing agreements between the two companies. Strauch is correct that an asset held in trust by a debtor for another is not property of the bankruptcy estate or the debtor. In re Unicom Computer Corp. (Mitsui Manufacturers Bank v. Unicom Computer Corp.), 13 F.3d 321, 324 (9th Cir. 1994) (misdirected payment), citing Bergier v. IRS, 496 U.S. 53, 59 (1990) (withholding and excise "trust fund" taxes); In re California Trade Technical Schools, Inc. (Kupetz v. United States), 923 F.2d 641, 645-46 (9th Cir. 1991) (federal student assistance funds).
 
 
 114
 However, what Strauch attempts to characterize as a trust is a garden-variety financing agreement in which ITT's loan of funds to 3-D was secured by the inventory 3-D purchased with the advanced funds. As noted above, property of the debtor's estate includes property in which a creditor has a security interest. In re Contractors Equip. Supply Co., 861 F.2d at 244. The fragility of Strauch's position is evident upon examination of the testimony Strauch offers in support of his contention. Dwight Fairchild, a regional manager for ITT, testified that 3-D "refused to pay us, so we went to court and got a TRO, which basically says that if they sell store inventory, they have to hold the funds in trust to pay ITT." [R.T. 58] This testimony does not establish that the inventory itself was not property of the bankruptcy estate, and in fact Strauch declared it as such in his bankruptcy petition.
 
 
 115
 Strauch's remaining sufficiency arguments pertaining to Count One are meritless. He claims that "ITT was [not] the legal equivalent to a trustee in bankruptcy" and therefore "no basis existed to charge the defendant with concealment from the trustee of any property of the estate before March 14, 1991 [the date of the trustee's appointment] ..." See Appellant's Opening Brief at 28. This argument is nonsensical, because Strauch was charged with concealing assets from creditors, not from a trustee.
 
 
 116
 Strauch also argues that he did not conceal assets from creditors because "[t]he alleged 'concealment' was not failure to disclose, but removal of inventory already disclosed ...." Id. (emphasis in original). This argument is frivolous. That Strauch may have disclosed the existence of inventory in no way precludes the conclusion that he physically concealed it to keep it from ITT and other creditors.
 
 
 117
 Strauch contends that there was insufficient evidence to convict him for concealment at Derrel's Storage after the date of the trustee's appointment, because he had already revealed the location of the inventory to ITT. However, Strauch was convicted of concealing property from creditors in December. Whether or not the inventory hidden away in Derrel's Storage was revealed to ITT in March, before the appointment of the trustee, simply has no bearing on the conduct for which Strauch was charged.
 
 
 118
 Finally, Strauch argues that there was no evidence of "continuous concealment" of the inventory in Gold River Storage. Again, Strauch misapprehends the nature of the charge for which he was convicted. The government did not need to show that the concealment continued up to the time the trustee was appointed, nor did it need to show concealment from the trustee. It needed to show only that Strauch concealed property from creditors in December, and this the government did.
 
 
 119
 The evidence, viewed in the light most favorable to the government, was more than sufficient to permit a reasonable jury to find Strauch guilty beyond a reasonable doubt of the conduct alleged in Count One. Universal Trade, 695 F.2d at 1153.
 
 2. Count Two
 
 120
 Strauch also alleges that his omission of two key creditors from his bankruptcy petition was not material, because he supposedly informed Microage of the bankruptcy within two weeks of filing the petition, and Compaq was only owed $9,000 and was not harmed by the omission.
 
 
 121
 In order to convict defendant of bankruptcy fraud ... the government must prove (1) the existence of the bankruptcy proceedings; (2) that a statement under penalty of perjury was made therein, or in relation thereto; (3) that the statement was made as to a material fact; (4) that the statement was false; and (5) that the statement was knowingly and fraudulently made....
 
 
 122
 United States v. Lindholm, 24 F.3d 1078, 1082-83 (9th Cir. 1994). The scope of materiality includes inquiries related to the bankrupt's assets and business transactions, and the history of its financial transactions. Id. "Materiality does not require a showing that creditors are harmed by the false statement." Id., quoting United States v. O'Donnell, 539 F.2d 1233, 1237-38 (9th Cir.), cert. denied, 429 U.S. 960 (1976).
 
 
 123
 The omission of two creditors from a bankruptcy petition with the avowed motive of preventing them from learning of the bankruptcy is clearly material. See id. at 1085 ("[A]n omission is the equivalent of a false statement"). Such an omission causes the debtor to appear financially stronger than it is, prefers some creditors over others, and stymies the effectiveness of the reorganization process.
 
 
 124
 As to the elements of knowledge and fraudulent intent, Strauch testified that he omitted Microage and Compaq from the petition so that they would not know that he had filed bankruptcy. The testimony of two other witnesses confirmed that that was Strauch's motive. There was more than sufficient evidence for the jury to find materiality and to convict on Count Two. Universal Trade, 695 F.2d at 1153.
 
 
 125
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34 (a); 9th Cir. R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Strauch's lawyer was sanctioned during the pendency of this appeal for dilatoriness in prosecuting it, and in his showing of cause, advised the court of his own arrest in an unrelated case and need for medical care relating to that personal crisis. We considered whether these events prevented us from reviewing the case appropriately, and decided that they did not. We considered the points raised on appeal and had no difficulty reviewing the record independently to determine whether, in light of controlling law, the appeal had merit. Our decision on the merits of the appeal of course has no preclusive effect on any collateral attack which might be available on account of the events regarding Strauch's lawyer
 
 
 [2]
 See Appellant's Opening Brief at 18 ("[T]he Government evidence and argument of concealment was from the trustee in bankruptcy ....") (emphasis in original) and 19-20 ("The indictment pled 'concealment from creditors,' defendant prepared his defense in that fashion. There was no concealment from creditors, therefore, a ... variance ... occurred herein justifying reversal")