UNITED STATES of America,
Plaintiff-Appellee,

v.

Harry ELLIS, Defendant-Appellant.

No. 94-1969.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 15, 1994.
Decided March 20, 1995.

Before COFFEY, RIPPLE and ROVNER, Circuit Judges.

RIPPLE, Circuit Judge.

Harry Ellis appeals his convictions on two counts of knowingly making a false statement in a bankruptcy case (counts I & II), two counts of knowingly making a false statement for the purpose of obtaining a loan insured by the Department of Housing and Urban Development (HUD) (counts III & IV), one count of knowingly passing an altered document for the purpose of obtaining a HUD-insured loan (count V), and two counts of knowingly using a false social security number with the intent to deceive (counts VI & VII). Mr. Ellis argues that the evidence is insufficient to sustain any of these convictions. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

Mr. Ellis filed bankruptcy petitions eight times within an eleven-year period. He filed petitions under Chapter 7 in 1980, 1986, and 1987, which resulted in the discharge of his debts. He filed petitions under Chapter 13 in 1981 and 1988, which were dismissed after he failed to make required payments to his creditors. In 1985, Mr. Ellis' Chapter 7 proceeding was dismissed for failure to pay filing fees and for failure to prosecute. In 1989, Mr. Ellis filed another petition under Chapter 13; this proceeding was dismissed later that year for Mr. Ellis' failure to prosecute. In 1991, Mr. Ellis filed once more under Chapter 7. This proceeding was dismissed in 1992 after the bankruptcy court found that Mr. Ellis had made a false oath and that Mr. Ellis was ineligible to file under Chapter 7 in light of his 1987 discharge. Thus, during an eleven-year period, Mr. Ellis' creditors were almost continually stayed from instituting collection actions and Mr. Ellis was able to receive three Chapter 7 discharges.

Mr. Ellis' success in obtaining bankruptcy relief was due, in part, to his use of four different social security numbers on his peti-

Brian P. Netols (argued), Office of the U.S. Atty., Crim. Div., Chicago, IL, Barry Rand Elden, Asst. U.S. Atty., Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Kent R. Carlson (argued), Chicago, IL, for defendant-appellant.

tions. In addition, on each of his later bankruptcy forms, Mr. Ellis systematically failed to answer fully the question whether he had previously filed in bankruptcy. The charges brought against Mr. Ellis that stem from this practice involve only his 1989 and 1991 petitions; on both of these petitions, Mr. Ellis simply left blank the question about previously filed petitions in bankruptcy.[1]

In 1989, Mr. Ellis applied for a HUD-insured loan. On the loan application, Mr. Ellis answered "N" to the question whether he had "been declared bankrupt in the past seven years." Gov't Ex. 11A. Mr. Ellis also used a social security number other than his own on his applications for a loan and for HUD insurance. When he filed the insurance application, Mr. Ellis told Wendy Albee, the individual who completed the loan and insurance applications for Mr. Ellis, that he had lost his social security card but remembered his number. In place of his social security card, Mr. Ellis submitted photocopies of his W–2 forms from 1986, 1987, and 1988. The social security number displayed on the copies of his 1986 and 1987 forms is not his assigned number and is in a typeface that does not exactly match the typeface on the remainder of the form. The government submitted Mr. Ellis' actual W–2 forms from 1986, 1987, and 1990, which bear his actual social security number. Janice Fogelman, a credit reporting agency administrator, testified that using a false social security number could allow Mr. Ellis to conceal his credit history from lenders.

## II

## DISCUSSION

### A. *Standard of Review*

■ Mr. Ellis' sole contention in this appeal is that the evidence is insufficient to sustain any of his convictions. By bringing such a challenge, Mr. Ellis bears a " 'heavy burden.' " *United States v. Scroggins,* 939 F.2d 416, 421 (7th Cir.1991) (citation omitted). "We will reverse a conviction on grounds of insufficiency of evidence only if,

viewing the evidence in the light most favorable to the prosecution, we conclude that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Goodstein,* 883 F.2d 1362, 1365 (7th Cir.1989), *cert. denied,* 494 U.S. 1007, 110 S.Ct. 1305, 108 L.Ed.2d 481 (1990) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Circumstantial evidence is sufficient to support a conviction. *Goodstein,* 883 F.2d at 1370 ("Fraudulent intent may be proved by circumstantial evidence.").

### B. *False Statements in a Bankruptcy Case*

■ The jury found Mr. Ellis guilty on two counts of "knowingly and fraudulently mak[ing] a false declaration, certificate, verification, or statement" in a bankruptcy case in violation of the criminal bankruptcy fraud statute, 18 U.S.C. § 152. These counts arose from Mr. Ellis' failure to list his prior bankruptcies on his 1989 (count I) and 1991 (count II) petitions. In order to sustain a conviction on this charge, the government must establish that (1) a bankruptcy proceeding existed under Title 11; (2) the defendant made a statement relating to the proceeding; (3) the proceeding was under penalty of perjury; (4) the statement related to a material matter; (5) the statement was false; and (6) the statement was made knowingly and fraudulently. *See* 1 *Collier on Bankruptcy* ¶ 7A.02(a) (Lawrence P. King ed., 15th ed. 1984). Mr. Ellis challenges his convictions on counts I and II on the grounds that (1) his omissions are not false statements and (2) even if Mr. Ellis' omissions constitute false statements, the government failed to prove that Mr. Ellis made them knowingly and fraudulently.

■ Section 152 "is a congressional attempt to cover all the possible methods by which a debtor or any other person may attempt to defeat the intent and effect of the bankruptcy law through any type of effort to keep assets from being equitably distributed

---

[1]. The 1989 Chapter 13 petition asked whether Mr. Ellis had ever filed for bankruptcy or had bankruptcies brought against him. The 1991

Chapter 7 petition addressed only bankruptcies in the preceding six years.

among the creditors." *Goodstein,* 883 F.2d at 1369 (quoting *In re May,* 12 B.R. 618, 625 (Bankr.N.D.Fla.1980)). Therefore, § 152 criminalizes the conduct of those who knowingly and fraudulently transfer or conceal the property of a debtor. Its scope reaches beyond the wrongful sequestration of a debtor's property and also encompasses the knowing and fraudulent making of false oaths or declarations in the context of a bankruptcy proceeding. *United States v. Key,* 859 F.2d 1257, 1259–60 (7th Cir.1988). "[T]he essence of the offense under § 152 is the making of a materially false statement or oath with the intent to defraud the bankruptcy court." *Id.* at 1260.

Mr. Ellis' challenge to his bankruptcy fraud convictions primarily rests upon his contention that the evidence was insufficient to establish that Mr. Ellis acted knowingly and fraudulently when he omitted to make any mention of his prior bankruptcy filings on the petitions in question. Mr. Ellis merely left blank the questions which inquired about prior bankruptcies. In evaluating this submission we first must determine whether an omission constitutes a "false statement" under § 152.

1. Omissions as False Statements

■ We have not had occasion to address the question of whether the omission of prior bankruptcies from a petition constitutes a "false statement" under § 152. However, our colleagues in the Ninth Circuit have addressed a similar situation. In *United States v. Lindholm,* 24 F.3d 1078 (9th Cir.1994), the debtor had falsely entered "none" on a bankruptcy petition when he was instructed to list his prior bankruptcy filings. *Id.* at 1085. The debtor "also made false statements by selectively listing one previously filed petition and actively omitting to mention the other petitions previously filed." *Id.* The Ninth Circuit held that the debtor's actions were sufficient to sustain his convictions under 18 U.S.C. § 152. It noted his false statement ("none") but also stated that, "[i]n any event, an omission is the equivalent of a false statement." *Id.* (citation omitted). The government urges us to adopt the reasoning of *Lindholm.*

Although we have not confronted previously whether failing to disclose prior bankruptcies constitutes a "false statement" under § 152, we have found that omissions of other material information may support a conviction under § 152. In *United States v. Cherek,* 734 F.2d 1248 (7th Cir.1984), *cert. denied,* 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985), the president and principal shareholder of a corporation failed to list an automobile as an asset on the corporation's bankruptcy petition. We held that this omission was sufficient to support a conviction for bankruptcy fraud: "Section 152 properly imposes sanctions on those who preempt a court's determination [of the status of an asset] by failing to report the asset." *Id.* at 1254.

The reasoning of *Cherek* is compatible with that of *Lindholm* and that reasoning ought to govern this case. In determining the appropriate disposition of a petition, a bankruptcy court must first be provided with a complete record of the debtor's accounts and credit history. A material omission on a bankruptcy petition impedes a bankruptcy court's fulfilling of its responsibilities just as much as an explicitly false statement. The bankruptcy courts depend on petitioners to provide truthful and complete information. These courts have the right to expect that the petitions filed will reflect accurately the financial situation of the petitioner. The bankruptcy adjudicatory process simply cannot function properly if petitioners are not honest about their credit history. "When honesty is absent, the goals of the civil side of the system become more expensive and more elusive." 1 *Collier on Bankruptcy* ¶ 7A.01(4)(a).

■ The importance of the debtor providing accurate information is illustrated by the fact that bankruptcy courts routinely deny discharges to petitioners who omit material facts about their credit history. *See In re Yonikus,* 974 F.2d 901, 904 (7th Cir.1992) (affirming revocation of discharge under 11 U.S.C. § 727(d)(2): "Debtors have an absolute duty to report whatever interests they hold in property."). The courts impose such a penalty because they require complete and accurate information to allow the trustee and

creditors to "trace the debtor's financial history from a reasonable period in the past to the present." *In re McCall*, 76 B.R. 490, 497 (Bankr.E.D.Pa.1987). Creditors should not be forced to undertake an independent investigation of a debtor's affairs; rather, they have a right to be "supplied with dependable information on which they can rely in tracing a debtor's financial history." *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992). Section 727 makes complete financial disclosure a "condition precedent" to the privilege of discharge, *see Broad Nat'l Bank v. Kadison*, 26 B.R. 1015, 1018 (D.N.J.1983), in order to preserve the goal of "fair dealing" between the debtor and creditors. *In re Zell*, 108 B.R. 615, 627 (Bankr.S.D.Ohio 1989).[2]

■ Criminal sanctions for bankruptcy fraud are designed to "set basic rules for participation in the civil bankruptcy process." 1 *Collier on Bankruptcy* ¶ 7A.01(4)(a). Thus, § 152 quite reasonably sets the expectation that debtors ought to disclose every material fact about their credit history, including prior bankruptcy filings. In this regard, it complements the policy of the bankruptcy statute that honesty and fair dealing are prerequisites to seeking the protection of the bankruptcy courts.[3]

This case vividly demonstrates the potential for abuse that exists when a debtor is less than fully forthcoming with this relevant information: Mr. Ellis was able to secure three Chapter 7 discharges within a period of seven years, despite the prohibition contained in 11 U.S.C. § 727(a)(8).[4] Furthermore, had the bankruptcy court been cognizant of Mr. Ellis' full history of repetitive filings, he would not have succeeded in almost continuously staying the collection ef-

**2.** In other contexts, material omissions have been held sufficient to establish fraud. *See United States v. Mattox*, 689 F.2d 531, 532 (5th Cir. 1982) (stating that when there is a duty to provide information to government with respect to worker's compensation benefits, the "knowing failure to supply the information requested is sufficient to permit ... a jury to conclude that [the defendant] has made a false statement"); *United States v. Irwin*, 654 F.2d 671, 676 (10th Cir.1981) (charge of making a false statement on an application for a grant from the Economic Development Administration includes leaving sections of application blank; "If there are facts that should be reported, leaving a blank belies the certification ... that the information ... is 'true and correct.' "), *cert. denied*, 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982), *overruled on other grounds, United States v. Daily*, 921 F.2d 994, 1004 (10th Cir.1990); *United States v. McCarthy*, 422 F.2d 160, 162 (2d Cir.) (noting that "[l]eaving a blank is equivalent to an answer of 'none' " in report by officer of labor organization to Secretary of Labor), *cert. dismissed*, 398 U.S. 946, 90 S.Ct. 1864, 26 L.Ed.2d 286 (1970).

Omissions alone have not been held sufficient to constitute fraud in every context. "[A]bsent something more," omissions are not sufficient to constitute fraudulent conduct under the mail and wire fraud statutes. *Reynolds v. East Dyer Dev. Co.*, 882 F.2d 1249, 1252 (7th Cir.1989); *cf. United States v. Biesiadecki*, 933 F.2d 539, 542–43 (7th Cir.1991) (holding that conviction could be sustained because there was abundant evidence of misstatements and misrepresentations). *But see United States v. Silvano*, 812 F.2d 754, 759 (1st Cir.1987) (breach of fiduciary duty by nondisclosure of information can support mail fraud conviction). When combined with affirmative misrepresentations, however, omissions may be evidence of fraudulent conduct under the mail and wire fraud statutes.

The general principle, articulated in *Reynolds*, that mere omissions do not constitute mail or wire fraud does not support Mr. Ellis' argument that his omissions are not false statements under § 152. In *Reynolds*, the court was addressing a concern highly relevant to mail and wire fraud but not relevant to bankruptcy fraud. "Given the pervasive use of the mails and of telephone and related services in the business world, along with the ease of satisfying the mail or wiring requirement, ... such a broad meaning for the mail and wire fraud statutes [i.e., a mere omission] 'would put federal judges in the business of creating what in effect would be common law crimes, i.e., crimes not defined by statute.' " *Reynolds*, 882 F.2d at 1252 (quoting *United States v. Holzer*, 816 F.2d 304, 309 (7th Cir. 1987), *vacated on other grounds*, 484 U.S. 807, 108 S.Ct. 53, 98 L.Ed.2d 18 (1987)). In the context of § 152, by contrast, there is a specific federal need for full disclosure if the federal bankruptcy process is to work.

**3.** Because the criminal law of bankruptcy fraud is concerned with setting basic rules and not with protecting creditors from specific harms, the government need not show that any creditor was injured by an omission or false statement to secure a conviction under § 152. 1 *Collier on Bankruptcy* ¶ 7A.01(4)(a); *see also In re Martin*, 124 B.R. 542, 544 (N.D.Ind.1991) (creditors need not be prejudiced by false oath to support denial of discharge under § 727).

**4.** A person may be discharged of debts under Chapter 7 only once every six years. 11 U.S.C. § 727(a)(8).

forts of his creditors for eleven years. Leaving blank the question concerning prior bankruptcy filings on Mr. Ellis' 1989 and 1991 petitions had the same practical effect as if Mr. Ellis had affirmatively replied "none." Therefore, if we are to be faithful to the congressional intent, omissions of this type must be treated, for purposes of § 152, in the same manner as blatantly false statements.

### 2. Knowing and Fraudulent Intent

 Mr. Ellis next argues that the evidence is insufficient to establish that his omission of the information regarding his prior bankruptcy filings was done with the requisite criminal intent. Intent to defraud the bankruptcy court is required to sustain a conviction under § 152. *See Key*, 859 F.2d at 1260. Mr. Ellis urges two reasons to bolster his contention that the evidence is insufficient to support a finding of knowing and fraudulent intent. We shall examine each.

First, Mr. Ellis claims that the government did not prove that he signed either petition. Both petitions are signed "Harry Ellis." No witnesses testified to verify either of these signatures. However, the record contains other evidence that the signatures were indeed those of the defendant. Wendy Albee verified Mr. Ellis' signature on another document admitted into evidence, an application for a HUD-insured loan. In addition, the 1989 petition contains Mr. Ellis' true social security number, the same address that was listed on Mr. Ellis' 1986, 1987, and 1988 bankruptcy filings, and the name of his actual employer at that time. The 1991 petition also contains Mr. Ellis' true social security number; it also lists an address which Patricia Waters, Mr. Ellis' former girlfriend, testified was Mr. Ellis' true address at that time.

 Mr. Ellis also submits that, even if it is sufficiently established that he signed the petitions, the prosecution failed to prove that he actually read and understood the contents of either petition. We believe that the jury was entitled to decide whether the signature evidenced Mr. Ellis' understanding of the substance of the document.

It is of course true that many people sign documents—even solemn documents reciting that the signer signed with knowledge of the contents and under penalty of perjury ... without reading them. This is a fact of life for a jury to consider in determining how likely it is that a defendant who signed a document knew what was in it.

*United States v. White*, 879 F.2d 1509, 1511 (7th Cir.1989), *cert. denied*, 494 U.S. 1027, 110 S.Ct. 1471, 108 L.Ed.2d 609 (1990). "[T]he issue should be whether the total circumstances, including but not limited to the bare fact of the defendant's signature, warrant a confident inference that the defendant knew what he was signing." *Id.* When the totality of the circumstances, including Mr. Ellis' numerous prior bankruptcy filings, is evaluated in the light most favorable to the government, it is clear that the evidence is sufficient to sustain the conviction. Mr. Ellis had filed for bankruptcy at least six times before he submitted the 1989 petition. The jury was entitled to conclude that he was familiar with the questions asked on these petitions, including the question concerning prior bankruptcies.

Mr. Ellis argues, however, that the location and language of the inquiry regarding prior bankruptcies varied greatly from form to form—implying that he easily could have missed or overlooked the question on any given form. This submission was a matter for the jury to evaluate. It certainly was not irrational for it to reach the decision that it did reach and, consequently, we shall not disturb its finding. On the basis of the record, it appears that Mr. Ellis played a very active role in the management of his personal finances. He filed bankruptcy petitions at least eight times. Mr. Ellis met with an attorney, Steven Fritzshall, to discuss at least one of his petitions—the 1989 Chapter 13 petition (at issue in count I). Fritzshall testified at trial that he obtained the information in the 1989 petition from a personal interview with Mr. Ellis. Fritzshall also testified that he left the answer to the prior bankruptcies question blank because Mr. Ellis told him he had no prior bankruptcies. Finally, Fritzshall observed that he charged Mr. Ellis $1,000, his standard fee for first-

time filers. The jury's conclusion that Mr. Ellis was familiar with the contents of the petitions and intentionally omitted any mention of his prior bankruptcies has a solid basis in the record. We shall not disturb it.

 Mr. Ellis submits that the prosecution failed to demonstrate that his omissions were not mistakes by either him or his attorneys. An inadvertent error would not support a violation of § 152 because the statute proscribes only false statements that are made "knowingly and fraudulently." In support of his position, Mr. Ellis notes that the prosecution did not call Ayesha Hakeem, the attorney who prepared Mr. Ellis' 1991 petition, to establish that Mr. Ellis withheld information about his prior bankruptcies from Hakeem. Also, Mr. Ellis argues that he was denied an opportunity to explain the omission on his 1991 petition to the bankruptcy court because the court dismissed the petition while he was out searching for his attorney.

 In evaluating this submission, we need only note that circumstantial evidence is sufficient to prove the fraudulent intent required to secure a conviction under § 152. *See Goodstein,* 883 F.2d at 1370. The evidence before the jury in this case certainly supports the conclusion that the omissions in question were no mistake. Mr. Ellis filed for bankruptcy eight times between 1980 and 1991; he used four different social security numbers in making those filings. Disclosure of either the 1986 or the 1987 Chapter 7 discharges would have made Mr. Ellis ineligible for a Chapter 7 discharge in 1991. Mr. Ellis' long history of bankruptcy filings would have likely influenced the court's decision regarding his 1989 Chapter 13 petition. Thus, Mr. Ellis possessed a strong motive to conceal fraudulently his prior bankruptcies from the court.

*C. Making False Statements for the Purpose of Obtaining a HUD–Insured Loan*

Mr. Ellis also appeals his convictions under 18 U.S.C. § 1010 [5] on two counts of making a false statement for the purpose of obtaining a loan insured by the Department of Housing and Urban Development (HUD). In order to prove a violation of § 1010, the government must establish three elements: " ' "the making of a false statement in [an] application, knowing it to be false, for the purpose of obtaining a loan from the lending institution and influencing the FHA [HUD]." ' " *United States v. Miller,* 962 F.2d 739, 746 (7th Cir.1992) (quoting *United States v. Lovett,* 844 F.2d 487, 489 (7th Cir.1988) (quoting *United States v. Leach,* 427 F.2d 1107, 1111 (1st Cir.), *cert. denied,* 400 U.S. 829, 91 S.Ct. 95, 27 L.Ed.2d 59 (1970))). Mr. Ellis had made two false statements in connection with the HUD-insured loan application that he completed with Midwest Funding Corporation. First, Mr. Ellis gave a false social security number (count III), and second, Mr. Ellis falsely answered a question which asked whether he had "been declared bankrupt in the past seven years" (count IV). Mr. Ellis contends that the evidence is insufficient to establish that he knew these statements were false.[6]

**1. Count III**

 Mr. Ellis used a social security number other than his own on the loan application. Mr. Ellis submits that the jury had insufficient evidence to infer that he knew that the social security number he provided was false. Mr. Ellis contends that he was simply mistaken when he supplied the incorrect social security number. Viewing the evidence in the light most favorable to the prosecution, however, we conclude that the jury certainly did not act irrationally when it concluded that Mr. Ellis provided a social security number other than his own. The

---

**5.** Section 1010 states, in relevant part:

Whoever, for the purpose of obtaining any loan ... with the intent that such loan ... shall be offered to or accepted by the Department of Housing and Urban Development for insurance, or for the purpose of obtaining any ... mortgage insured by such Department, ... makes, passes, utters, or publishes any state-

ment, knowing the same to be false, ... shall be fined not more than $5,000 or imprisoned not more than two years, or both.

18 U.S.C. § 1010.

**6.** Mr. Ellis does not deny that the purpose of the loan application was to obtain a HUD-insured loan.

evidence of record makes it clear that Mr. Ellis knew his own social security number. It also supports the conclusion that he often used false social security numbers. Indeed, Mr. Ellis used three different false social security numbers in the course of his numerous bankruptcy filings. The number that Mr. Ellis supplied in his application for a HUD-insured loan is different from all of those numbers previously used by Mr. Ellis. Mr. Ellis then later used this same false social security number in a HUD insurance application. From this evidence, the jury could rationally infer that Mr. Ellis knew his social security number and that Mr. Ellis intentionally submitted a false number in order to obscure his credit history.

#### 2. Count IV

▇▇▇▇The jury convicted Mr. Ellis on a second count of violating § 1010 (count IV of the indictment) on the basis of Mr. Ellis' false statement to Wendy Albee, the Midwest Funding loan originator who prepared Mr. Ellis' loan application, that he had not been "declared bankrupt" in the last seven years and Albee's concomitant entry of "N" in response to that question on the application for the HUD-insured loan. Mr. Ellis argues that the evidence is insufficient to prove that he understood the meaning of the term "declared bankrupt." In light of Mr. Ellis' financial history, however, the jury certainly was entitled to find this argument to be particularly unconvincing. Mr. Ellis had filed for bankruptcy at least seven times and he had received three Chapter 7 discharges

before he filed this loan application. Mr. Ellis' 1989 Chapter 13 petition was still pending at the time Mr. Ellis applied for the loan in question. Viewing Mr. Ellis' involvement in these numerous bankruptcy proceedings in the light most favorable to the prosecution, the jury could rationally conclude that Mr. Ellis fully understood the meaning of the phrase "declared bankrupt."

#### D. *Passing Altered Documents for the Purpose of Obtaining a HUD–Insured Loan*

▇▇▇▇Mr. Ellis was convicted of violating § 1010 [7] (count V of the indictment) for knowingly passing altered documents for the purpose of obtaining a HUD-insured loan. Less than two months after completing his application for a HUD-insured loan, Mr. Ellis applied for HUD insurance. Loan officer Albee testified that Mr. Ellis gave her his social security number from memory after claiming to have lost his social security card. Mr. Ellis also submitted photocopies of several W–2 forms. His 1986 and 1987 forms from Fansteel, Inc. appear to have been altered when compared to the actual copies, which bear Mr. Ellis' true social security number.[8] There is a clear basis for the jury's determination that the evidence established that Mr. Ellis knowingly passed altered documents in violation of § 1010.

#### E. *Using a False Social Security Number with Intent to Deceive*

▇▇▇▇Mr. Ellis was also convicted under 42 U.S.C. § 408(g)(2) [9] on two counts of using a false social security number with the intent

---

7. The statute states, in relevant part:
 Whoever, for the purpose of obtaining any loan ... with the intent that such loan ... shall be offered to or accepted by the Department of Housing and Urban Development for insurance, or for the purpose of obtaining any ... mortgage insured by such Department ... alters, forges, or counterfeits any instrument, paper, or document, or utters, publishes, or passes as true any instrument, paper, or document, knowing it to have been altered, forged, or counterfeited ... shall be fined not more than $5,000 or imprisoned not more than two years, or both.
 18 U.S.C. § 1010.

8. Mr. Ellis submitted forms from two employers—Fansteel and Ozite—and Mr. Ellis was actually employed at Ozite under the same false social security number that appeared on the face of

the Ozite W–2 forms; those forms, although containing a false social security number, had not been altered. Thus, the § 1010 altered document charge brought against Mr. Ellis was based only on the Fansteel W–2 forms.

9. Redesignated as § 408(a)(7)(B). Section 408(a)(7)(B) states:
 Whoever ... for the purpose of obtaining ... any payment or any other benefit to which he ... is not entitled, or for the purpose of obtaining anything of value from any person, or for any other purpose ... with intent to deceive, falsely represents a number to be the social security account number assigned by the Secretary to him ... when in fact such number is not the social security account number assigned by the Secretary to him ... shall be guilty of a felony....

to deceive. The elements of the offense are "that [the] defendant (1) for any purpose, (2) with intent to deceive, (3) represented a particular social security account number to be his or another person's, (4) which representation was false." *United States v. Darrell*, 828 F.2d 644, 647 (10th Cir.1987). Mr. Ellis' convictions arose out of his use of a number other than his own on the HUD-insured loan application (count VI) and the HUD insurance application (count VII).

Mr. Ellis points out that he stated to Agent Walkowiak upon his arrest that he did not know his social security number. He also notes that his W–2 forms bore two different social security numbers. He contends that he was honestly confused about which social security number was correct. The jury knew that Mr. Ellis filed for bankruptcy on at least eight occasions, using his real social security number four times (1980, 1981, 1989, and 1991). Mr. Ellis received W–2 forms bearing his correct social security number and was convicted of intentionally altering certain of these W–2 forms that were presented with his HUD insurance application. In addition, Mr. Ellis possessed a strong motive to use a false social security number on his loan and insurance applications: If he did not conceal his prior credit history, these applications most likely would have been denied. Mr. Ellis used a social security number on the loan and insurance forms that he had never used in any of his prior bankruptcy proceedings; thus, his prior bankruptcies did not show up on a credit check. Considering the evidence in the light most favorable to the prosecution, the jury had ample evidence from which to find that Mr. Ellis knowingly used a false social security number with the intent to deceive.

## Conclusion

The evidence is sufficient to sustain Mr. Ellis' convictions on all seven counts. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.