In re Petition for DISCIPLINARY ACTION AGAINST Joseph Anthony WENTZELL, an Attorney at Law of the State of Minnesota.

No. C5–01–1871.

Supreme Court of Minnesota.

Feb. 13, 2003.

**404**

Timothy Michael Burke, St. Paul, MN, for Petitioner.

Richard J. Harden, Woodbury, MN, for Respondent.

## OPINION

PER CURIAM.

In this attorney discipline proceeding, we review the referee's finding that respondent, Joseph A. Wentzell, intentionally misrepresented or omitted material facts to the bankruptcy court during his representation of three Chapter 11 debtors in federal bankruptcy proceedings. We hold that the referee did not err in concluding that Wentzell acted intentionally. We also review the referee's recommendation of suspension for a minimum of six months; we conclude that a six-month suspension is appropriate.

Wentzell was admitted to the practice of law in Minnesota in 1985, and prior to his admission here he practiced in Texas for three years. Throughout his career he has represented numerous debtors in Chapter 7, 11, 12, and 13 bankruptcy proceedings and is knowledgeable about the requirements of bankruptcy laws.

On October 15, 2001, the director of the Offices of Lawyers Professional Responsibility (director) filed a petition against Wentzell charging him with failing to comply with applicable federal laws, rules, and regulations; representing a bankruptcy debtor when his firm was a creditor of the debtor and when he was claiming to hold real property of the debtor in trust; making false or misleading statements; and failing to disclose material facts, in violation of Rules 1.7(b) (conflict of interest), 1.8(a) (prohibited transactions), 3.3(a)(1) (candor towards the tribunal), 3.4(c) (fairness to opposing party and counsel), 4.1 (truthfulness in statements to others), and 8.4(a), (c), and (d) (prohibiting violations of the rules; engaging in fraud, dishonesty, deceit, or misrepresentation; and engaging in conduct prejudicial to the administration of justice) of the Minnesota Rules of Professional Conduct. In his answer, Wentzell denied that he violated the Rules of Professional Conduct. He argued that any mistakes or omissions made during the course of his representation were due to excusable neglect. In mitigation, he offered his lack of prior disciplinary history, and his participation in the bar and in his community.

The matter was assigned to a referee who conducted a two-day hearing. Upon hearing all the evidence, the referee found that Wentzell failed to comply with appli-

cable federal statutes, rules, and regulations; improperly conducted business transactions with his client; gave misleading statements to the court and opposing counsel; and intentionally failed to disclose material facts during his representations to the bankruptcy court and the referee in violation of Rules 1.7(b), 1.8(a), 3.3(a)(1), 3.4(c), 4.1, and 8.4(c) and (d) of the Minnesota Rules of Professional Conduct. The referee rejected Wentzell's claims of excusable neglect and found that Wentzell refused to accept responsibility for the wrongful nature of his conduct and instead blamed, in turn, his secretary, the Attorney–Advisor, sleep apnea, and a faulty computer program. Based on these findings, and in the absence of mitigating factors, the referee recommended that Wentzell be suspended from the practice of law for a minimum of six months. Wentzell sought review.

## I.

Wentzell ordered a transcript of the referee's hearing. Therefore, according to Rule 14(e), Rules on Lawyer's Professional Responsibility (RLPR), the referee's findings and conclusions of law are not binding on this court. *See In re Westby,* 639 N.W.2d 358, 367 (Minn.2002). Even so, we give great deference to a referee's findings and will not reverse those findings unless they are clearly erroneous, especially in cases where the referee's findings rest on disputed testimony or in part on respondent's credibility, demeanor, or sincerity. *In re Barta,* 461 N.W.2d 382, 382 (Minn.1990). To find that a referee's findings were "clearly erroneous," this court must be "left with the definite and firm conviction that a mistake has been made." *In re Strid,* 551 N.W.2d 212, 215 (Minn. 1996) (quoting *Gjovik v. Strope,* 401 N.W.2d 664, 667 (Minn.1987)).

The referee's findings detail the following story. Wentzell began representing a married couple and their adult son in 1996 and over the next two years provided legal assistance in resolving various issues with their creditors. His work on these matters resulted in a total of $47,981 in attorney fees, $17,600 of which was paid in November of 1997. When Wentzell filed his clients' Chapter 11 bankruptcy petitions in February of 1998, his clients still owed his firm over $12,000 for services rendered in 1997, unrelated to the bankruptcy filing. Two days before the petition was filed, the husband and wife transferred to Wentzell their property interest in nine lots and a tract of real estate. Other than the deed and a certificate of real estate value, there was no retainer agreement or other documentation explaining whether Wentzell received these lots in consideration for legal services to be rendered in association with the pending bankruptcy or whether these lots were payment for the services already rendered.

Although required under bankruptcy law, Wentzell failed to disclose this transfer in either the debtors' schedules, statement of financial affairs, or statement of compensation. The only reference to the transfer was provided in an affidavit attached to his employment application, which states "[t]hat the retainer received prior to the commencement of this action was real estate residential lots which are being held in Affiant's name pending further order of this Court." Wentzell's affidavit did not fully explain how many lots were transferred, whether they were for pre-petition or post-petition services, or their value. Wentzell subsequently sold one of the lots and gave the proceeds to his debtor clients without the bankruptcy court's knowledge or approval. Wentzell also failed to list his firm as a creditor in the schedules as required under bankruptcy law, even though his clients still owed

Wentzell's firm over $12,000 for services previously rendered.

Wentzell made numerous inconsistent statements about the nature of the real estate transfers and the pre-petition payment of attorney fees. In an affidavit and at a meeting of the creditors, Wentzell stated that the property was being held in trust for his retainer. It was not until Wentzell sought to be approved as counsel for the debtors that Wentzell told the bankruptcy court that he owned some of the lots, which he had received as compensation for services rendered pre-petition. Wentzell's characterization of these lot transfers changed again during the disciplinary proceedings when he testified to never having owned the property; he claimed that his clients owned the land and the sale of one of the lots was in the "ordinary business" of selling lots, which justified selling the lots without notifying the court. Throughout both proceedings Wentzell's testimony was constantly shifting; his claims regarding how many lots were transferred to him, their worth, and who was to obtain the proceeds from the one lot sale were inconsistent.

The bankruptcy court denied Wentzell's application for retention. In doing so, the bankruptcy court stated:

> The failure to disclose the transfer of title to those properties and the failure to list the properties themselves in any way in the schedules is evidence—compelling evidence to the Court that what was done pre-petition with respect to this property was intentional toward the result of concealment which is also indication of knowledge of the inappropriateness of the transactions themselves.

> But it seems hardly necessary to look to the absence of disclosure in the schedules to find and conclude that this inappropriate dealing with respect to property of the debtors in connection with the case was knowingly improper. We have counsel here who is well grounded in the practice of Bankruptcy Law. It is well settled not only in this District but in this Circuit what are and what are not appropriate transfers, what are and what are not appropriate arrangements for compensation during the pendency of the case, and this is not even close. This is not even close. This does not even present the slightest gray area.

Transcript of Continued Hearings on Motion at 18–19, *In re Hurrle*, Docket Nos. 98–30206, 98–30207, (U.S.Bankr.Ct., D.Minn. Apr. 14, 1998). The bankruptcy court concluded that there were serious intentional omissions by Wentzell and emphasized that the integrity of the judicial process demands full and complete disclosure at every step. Consequently, Wentzell returned the property interests to his clients and did not receive any fees associated with the work he had completed on his clients' bankruptcy matters.

Wentzell argued in his disciplinary hearing that the bankruptcy court's findings regarding his conduct were unreliable because they were based on inaccurate testimony by the Attorney–Advisor to the United States Trustee.[1] In addition,

---

1. In order to receive compensation for work related to a bankruptcy petition, an attorney must file an employment application with the United States Trustee's office. The United States Trustee's office reviews such applications and makes a recommendation to the bankruptcy court as to whether that attorney should be approved as debtor's counsel. Where the United States Trustee's office intends to recommend that the application be denied, the attorney is notified and a hearing before the bankruptcy court is required before debtor's counsel will be approved. In this case, there was a dispute at the time of the bankruptcy court hearing as to whether the United States Trustee's office had received

Wentzell testified and presented testimony from a number of witnesses to support his claim that a problematic computer program resulted in inaccuracies in the debtors' schedules, statement of financial affairs, and statement of compensation. Finally, Wentzell claims he never intended to mislead the bankruptcy court as evidenced by his disclosure of the property transfer to his law partners and the fact that two of the creditors' attorneys were not misled by his conduct. Wentzell questioned whether the property transfers were indeed improper under the bankruptcy laws. The referee rejected each of Wentzell's claims, finding Wentzell's actions and testimony to be deceitful, erroneous, and misleading.

 We evaluate Wentzell's conduct and the referee's conclusions in the context of the lawyer's obligations under the bankruptcy code. An attorney in bankruptcy court is required to provide *complete* and *accurate* information regarding compensation received from the debtor for services and any potential conflicts with the client, creditors, or any interested party in the matter so that the bankruptcy court can determine whether they are disinterested. *See* 11 U.S.C. §§ 327(a), 329; Fed. R. Bankr.P.2014(a). The primary underpinning of a bankruptcy proceeding is that the debtor and the debtor's attorney are required to disclose everything regarding the debtor's debts, liabilities, transactions, and assets, as well as any connections between the debtor and the attorney. *See United States v. Ellis*, 50 F.3d 419, 424 (7th Cir.1995) (noting that "honest and fair dealings are prerequisites to seeking the protection of the bankruptcy courts"); *In*

*re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 850 (10th Cir.1997) (stating that "the attorney has a duty to fully disclose any connections with the debtor or creditors that might create a possible conflict, and all fee arrangements with the debtor in possession"). It is not the responsibility of the bankruptcy court to comb through the transcripts, schedules, petitions, and affidavits to determine the truth of the attorney's testimony. *See In re Pierce*, 809 F.2d 1356, 1363 n. 20 (8th Cir.1987). The penalty for failing to completely and honestly disclose information is severe. *See Ellis*, 50 F.3d at 423–24 (stating that debtors who fail to appropriately disclose may have their petition denied or find themselves subject to criminal penalties); *Pierce*, 809 F.2d at 1363 (holding that an attorney who failed to appropriately disclose a property interest in his client's real estate could not be reimbursed for expenses or for services rendered in relation to the bankruptcy).

 The record in this case is replete with evidence of Wentzell's misleading statements and failure to disclose material facts to the bankruptcy court and the referee. Wentzell had numerous opportunities to provide complete, accurate, and honest documentation of the real estate transfer, but did not at any time fully disclose the amount of property transferred, its worth, or exactly which lots were for pre-petition versus post-petition services. It is unlikely that the bankruptcy court or trustee would have noticed the pre-petition transfer to Wentzell had his client not truthfully testified in the original creditors' meeting. These facts show that

Wentzell's employment application. This dispute was resolved by the disciplinary proceedings and the referee concluded that although the Attorney–Advisor had incorrectly advised the bankruptcy judge regarding *when* Wentzell filed his employment application, the Attorney–Advisor's statements had little impact on the bankruptcy judge's findings regarding whether Wentzell should serve as counsel.

Wentzell's actions were intentional and not the result of carelessness or inadvertence.

Wentzell is an experienced bankruptcy attorney, knows what disclosures are to be made and to whom, and is familiar with the penalties associated with failure to properly disclose the required information. Wentzell was given the opportunity to clarify the nature of the real estate transfers and payment for attorney fees at the creditors' meeting, in front of the bankruptcy court, and at his disciplinary hearing. At each turn his statements were inconsistent and served to further obscure or confuse the matter at hand. Wentzell engaged in a pattern of conduct characterized by obfuscation. The referee's reliance on the bankruptcy judge's statements and the referee's finding that Wentzell's pattern of conduct amounted to an intent to deceive the bankruptcy court and the creditors are not clearly erroneous because both are amply supported in the record.

## II.

We turn now to the question of the appropriate discipline in this case. The purpose of discipline is not to punish the attorney, but rather "to protect the courts, the public, and the profession and to guard the administration of justice." *Westby*, 639 N.W.2d 358, 370 (Minn.2002) (quoting *In re Flanery*, 431 N.W.2d 115, 118 (Minn.1988)). "[W]e examine the nature of the misconduct, the cumulative weight of the disciplinary rule violations, the potential harm to the public, and the harm to the legal profession." *Id.* Although prior cases are helpful by way of analogy, appropriate sanctions are determined on a case-by-case basis by first examining the specific acts of misconduct and then looking for the presence of aggravating or mitigating circumstances. *See In re Kaszynski*, 620 N.W.2d 708, 713 (Minn. 2001). While the referee's recommenda-

tions are given great weight, the final responsibility for determining appropriate sanction rests solely with this court. *In re Brehmer*, 620 N.W.2d 554, 561 (Minn. 2001).

The referee recommends an indefinite suspension from the practice of law for a minimum of six months. Suspension may be supported on a showing that the attorney is guilty of any deceit or willful professional misconduct, or for a willful violation of the attorney's oath or of any duty imposed on an attorney by law. Minn.Stat. § 481.15, subd. 1 (2002); *see In re Zotaley*, 546 N.W.2d 16, 21 (Minn.1996) (finding a six-month suspension was warranted for an attorney who took a generic form from another file and held out the form as if it were a part of his client's file); *In re Jagiela*, 517 N.W.2d 333, 336 (Minn. 1994) (six-month suspension warranted for an attorney who backdated an agreement that he drafted, gave the agreement to opposing counsel and the bankruptcy court, and failed to correct the false date in deposition testimony concerning the document). "Honesty and integrity are chief among the virtues the public has a right to expect of lawyers." *In re Ruffenach*, 486 N.W.2d 387, 391 (Minn.1992). Any breach of that trust is misconduct of the highest order and warrants severe discipline. *Id.; see also In re Nilva*, 266 Minn. 576, 583, 123 N.W.2d 803, 809 (Minn. 1963) (finding that severe sanctions should be imposed on attorneys who have deliberately deceived the court because their actions not only violate the administration of justice, but also "subvert[ ] that loyalty to the truth without which he cannot be a lawyer in the real sense of the word").

Wentzell's misconduct warrants severe discipline. His numerous inconsistent, false, and inaccurate statements under oath hindered the bankruptcy court's adjudication and violated the rights of the

creditors and debtors. Wentzell argues that severe discipline is not warranted because his clients and the creditors were unharmed. We reject this argument. Wentzell's actions violated his duty of faithful allegiance to the truth, and his deliberate deceit interfered with the administration of justice. Furthermore, it was mere fortuity that the bankruptcy court prevented any harm to the debtors. It was only upon the denial of his employment application by the bankruptcy court that Wentzell returned the real estate interests to his clients. In sum, the record amply supports our determination that Wentzell's actions frustrated the administration of justice.

 An attorney's discipline may be mitigated by evidence that he cooperated with the investigation, did not attempt to conceal the misconduct, has taken actions to ameliorate the problems, and shows that he appreciates the harm his actions caused. *In re Thedens,* 557 N.W.2d 344, 347–48 (Minn.1997); *In re Singer,* 541 N.W.2d 313, 316 (Minn.1996). Although evidence showing that an attorney has had no prior record of discipline, is involved in the community, and has cooperated fully with the director is important, we have found that such factors do not militate against imposing severe discipline where the misconduct involves serious ethical violations. *In re Franke,* 345 N.W.2d 224, 229 (Minn.1984). While Wentzell has cooperated with the director's investigation, there is no evidence indicating that he appreciates the harm he has caused. Because Wentzell has committed so many disciplinary rule violations, his activities in the community, while laudable, do not militate against imposing a severe penalty for his failure to be truthful and honest during his representations of the debtors.

In summary, based on the record before us, we conclude that Joseph Anthony Wentzell has violated Rules 1.7(b), 1.8(a), 3.3(a)(1), 3.4(c), 4.1, and 8.4(c) and (d) of the Minnesota Rules of Professional Conduct. There are no factors to mitigate his conduct, and violations of this type warrant severe discipline.

Accordingly we order that:

1. Wentzell is suspended from the practice of law for a period of six (6) months, commencing fourteen days from the date of this order. The requirements of Rules 18(a) through (d) are waived and respondent may petition for reinstatement under Rule 18(f), RLPR.

2. Wentzell must comply with the requirements of Rule 26, RLPR, within 10 days of the court's order.

3. Within one year of the suspension order, Wentzell must comply with the requirements of Rule 18(e)(3), RLPR.

4. Wentzell shall pay to the Director the sum of $900 in costs and disbursements pursuant to Rule 24, RLPR.

So ordered.