In re Petition for DISCIPLINARY AC-
TION AGAINST Jerome M. RUDAW-
SKI, a Minnesota Attorney, Registra-
tion No. 9416X.

No. A05–484.

Supreme Court of Minnesota.

March 2, 2006.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) and respondent Jerome M. Rudawski appeal the supreme court referee's recommendation that Rudawski be suspended from the practice of law for 60 days for engaging in the unauthorized practice of law while on involuntary restricted status, in violation of Minn. R. Prof. Conduct 5.5(a). Rudawski was on involuntary restricted status as a result of his failure to comply with continuing legal education (CLE) reporting requirements.

Because Rudawski ordered a transcript of the referee hearing, the referee's findings of fact and conclusions of law are not binding on this court. Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR); *see also In re Wentzell*, 656 N.W.2d 402, 405 (Minn.2003). Rudawski challenges findings of fact 11, 12, 13, 14, 18, and 19, as well as the referee's conclusions of law. Rudawski argues that the appropriate discipline is unsupervised probation for two years. The Director does not challenge any of the referee's findings of fact or conclusions of law, but requests that Rudawski be suspended from the practice of law for a minimum of 90 days and that he be required to go through a Rule 18, RLPR, reinstatement hearing in order to be reinstated to the practice of law. For the reasons discussed below, we conclude that none of the referee's findings are clearly erroneous and we adopt the referee's recommendation to suspend Ru-

dawski from the practice of law for 60 days.

Rudawski was admitted to practice law in Minnesota in 1978. In 1987, this court publicly reprimanded him for improperly notarizing a signature and failing to make reasonable inquiry into the legitimacy of the signature (which had been forged). *In re Rudawski*, 407 N.W.2d 683, 683 (Minn. 1987). Rudawski was admonished in July 2000 for failing to actively pursue his clients' interests and for failing to return client phone calls or affirmatively communicate in any way with those clients. Rudawski was again admonished in January 2001 for depositing a client's retainer in his business account and then, when the client terminated the representation, withdrawing funds from the retainer without providing detail to the client about the date of his work, the services performed, or the purpose of the work.

On June 30, 2002, Rudawski was due to complete 45 hours of approved CLE credits for the preceding three-year period. The Minnesota Board of Continuing Legal Education (Board) sent him a notice on August 19, 2002, reminding him that he was required to file an affidavit of compliance with the CLE requirements on or before August 30, 2002. Rudawski, who had moved his office address without notifying the Board, asserted at his referee hearing that he never received this letter. Rudawski also testified that he never received the "Final Warning" notice sent to him by the Board on November 4, 2002. On November 26, 2002, the Board then sent Rudawski a "Notice of Non–Compliance." Rudawski testified before a disciplinary panel in January 2005 that he never received this notice, but he produced the notice on the morning of his referee

hearing in May 2005 and explained that he had found it the night before.

On January 23, 2003, this court issued an order placing Rudawski on involuntary restricted status for failure to comply with the CLE statutory requirements. Upon receipt of the order, Rudawski retained Edward Kautzer on February 6, 2003, to assist him in getting reinstated. Upon being retained, Kautzer told Rudawski to "calm down," and assured Rudawski that he would "take care of this" for him. The same day, Kautzer faxed a letter to the Board, with a copy to Rudawski, requesting "an extension of time for [Rudawski] to complete the 12 hours he needs to wrap up his CLE credits." [1] The letter referenced a "notice * * * regarding non-compliance" that Rudawski had received that day and indicated that a $125 check "for the transfer from restricted status to active status" would be included with the mailed copy of the letter. According to Rudawski, he was "under the impression or belief that [he was] authorized to practice law after [he] received" the copy of Kautzer's letter to the Board.

Kautzer discussed this letter in a phone conversation with Margaret Corneille, Director of the Board, one week later—February 13, 2003. Kautzer believed that, after this conversation, he orally advised Rudawski that Rudawski was authorized to practice law. Kautzer sent a letter to the Board on March 10, 2003, that included a list of Rudawski's 30.25 hours of completed CLE credits. In the March 10 letter, Kautzer requested that Rudawski be given a "90 day[ ] extension in which to complete" his unfulfilled CLE requirements. Rudawski testified that he received a copy of this letter and assumed it to be the

---

1. As of that date, Rudawski actually needed 24.25 additional hours to meet his 45–hour requirement.

basis for his continuing to practice, even though he never received a response from the Board regarding Kautzer's request for the 90–day extension. In a phone conversation on March 14, 2003, Corneille informed Kautzer that Rudawski could not be transferred from involuntary restricted status to active status until after he had completed a minimum of 45 hours of CLE credits plus an additional prorated amount for the next three-year cycle. At the referee's hearing, Kautzer, while not specifically saying whether he had called Rudawski and told him about the conversation with Corneille, believed that he "ordinarily would" have under his "normal office procedure." Rudawski denies that Kautzer ever informed him by phone that he was still on involuntary restricted status. The referee found that:

> Within days thereafter, Mr. Kautzer informed [Rudawski] by phone of the substance of the conversation with Ms. Corneille: that [Rudawski] did not have an "extension" to complete the overdue 45 credit hours, that [Rudawski's] license was, in fact, on involuntary restricted status as per the Supreme Court's order and Rule 12, and that [Rudawski] was practicing while on restricted status until [Rudawski] completed the minimum 45 hours.

In an April 24, 2003, letter to Rudawski, Kautzer wrote, "you are, until the order is lifted by the Supreme Court, practicing while suspended for failure to comply with CLE requirements." According to Rudawski, "my recollection is that I did not receive this letter."

The referee found that Kautzer sent Rudawski's affidavit of compliance to the Board on August 5, 2003. On August 12, 2003, the Board sent a letter to Rudawski stating, "We will notify the Supreme Court that you may be reinstated. Remember that you remain on restricted status until the Court issues an order reinstating you." On August 13, 2003, by order of this court, Rudawski's license to practice law was reinstated to active status.

During this time period, Rudawski was representing a client in a divorce proceeding. At some point, the opposing party, acting pro se, questioned Rudawski's license to practice law. According to Rudawski, the opposing party "indicated to the [c]ourt that I was * * * suspended and I shouldn't be appearing." On August 14, 2003, Washington County District Court Judge Stephen Muehlberg, who was presiding over the divorce proceeding, sent Rudawski a letter asking about the status of his license to practice law. Judge Muehlberg's letter read, "Please advise me of the status of your license to practice law in Minnesota on February 5, 2003, April 16, 2003, and June 30, 2003. Also please advise me of the status of your attorney license now." In a letter dated August 18, 2003, Rudawski responded to Judge Muehlberg by writing, in part:

> On or about February 6, 2003, I received notification from the Minnesota Board of Continuing Legal Education, that I had failed to comply with the 45 hours of CLE credits for the period ending June 30, 2002. I immediately retained Attorney Edward Kautzer to represent me before the Minnesota Board of Continuing Legal Education regarding their intention to place me on involuntary restricted status. Attorney Edward Kautzer's letter to the Minnesota Board of Continuing Legal Education dated February 6, 2003, reflected a negotiated settlement proposal avoiding my inactive status.

Pursuant to the Rules of the Supreme Court and the Rules of the Board of Continuing Legal Education, Rule 12, *"Restricted Status"*, specifically, Section (b), entitled, *"Transfer from Restricted*

*Status to Active Status*", my attorney, Mr. Kautzer, submitted to the Board a $125.00 transfer fee, allowing me to maintain my license and active status, subject to an agreement requiring me to complete CLE credits. A copy of Rule 12(b), subd. (1), (2), (a), (b), (c), is enclosed herein for your consideration.

I have also enclosed the most recent correspondence received from the Board of Continuing Legal Education, dated August 12, 2003, acknowledging my affidavit of CLE compliance and my return to active status.

The referee found that Rudawski's letter to Judge Muehlberg misrepresented Rudawski's "actual notice regarding the status of [Rudawski's] license during much, if not all, of the period in question." The referee considered Rudawski's misrepresentations to be an aggravating factor in determining the appropriate discipline for Rudawski.

In his findings of fact, the referee, among other things, found:

11. Within days [of March 14, 2003], Mr. Kautzer informed Respondent by phone of the substance of the conversation with Ms. Corneille: that Respondent did not have an "extension" to complete the overdue 45 credit hours, that Respondent's license was, in fact, on involuntary restricted status as per the Supreme Court's order and Rule 12, and that Respondent was practicing while on restricted status until Respondent completed the minimum 45 hours.

12. On March 24, 2003, Mr. Kautzer wrote to Respondent at Respondent's current office address, informing Respondent that in order to "settle [the] CLE issue," Respondent needed to "complete the 45 credits," plus a pro rated amount of additional credits, in order for "the Supreme Court to get your name off the shit list."

13. On April 24, 2003, Mr. Kautzer sent another letter to Respondent at Respondent's current address, inquiring as to Respondent's progress toward completing the necessary credits and reporting them to the Board of CLE. The letter stated: "keep in mind that you are, until the order is lifted by the Supreme Court, practicing while suspended for failure to comply with CLE requirements."

14. On August 5, 2003, Mr. Kautzer sent Respondent's Affidavit of Compliance to the Board of CLE indicating that Respondent had completed the 45 hours required for the reporting period ending June 30, 2002.

\* \* \* \*

18. Respondent has asserted that Respondent's admitted violations of the Supreme Court order, Rule 5.5(a), Minnesota Rules of Professional Conduct, and Rule 12 of the Rules of the Board of CLE were unintentional. While intent is not an element of the misconduct, lack of intent might constitute grounds for mitigation. Respondent has failed to prove that Respondent's misconduct was unintentional, however.

19. Respondent's misconduct is aggravated by Respondent's misrepresentations to Judge Muehlberg, the Director's Office, and at the hearing before this referee as to Respondent's actual notice regarding the status of Respondent's license during much, if not all, of the period in question. The evidence establishes that Respondent knew, or should have reasonably known, Respondent was practicing while on restricted status, and Respondent's statements to the contrary are aggravating factors.

The referee further found that Rudawski practiced law, on a continuous basis, for

more than six months after this court placed him on involuntary restricted status.

The referee concluded that Rudawski's "conduct in practicing while on involuntary restricted status was in direct violation of the Supreme Court's order, and such practice constituted multiple instances of the unauthorized practice of law in violation of Rule 5.5(a), Minnesota Rules of Professional Conduct." The referee then recommended that Rudawski "be suspended for a period of sixty (60) days." In the memorandum accompanying his findings of fact and conclusions of law, the referee stated, "The recommendations set forth above are based upon the Referee's opinion that [Rudawski] either knew or was willfully ignorant of [his] restricted status during the period of February 06, 2003 through August 13, 2003 and that [he] continued to engage in the practice of law during said period." The referee also stated that Rudawski's "claim that [he] did not receive the notices by the Board of CLE and the letters from [his] attorney suspect given the usual reliability of the mail system and the fact that [Rudawski] discovered in [his] possession the Board of CLE's Final Notice which [Rudawski] adamantly claimed to have not received in previous hearings."

Although the referee's findings of fact are not binding in this case because Rudawski ordered a transcript, this court nonetheless gives "great deference to a referee's findings and will not reverse those findings unless they are clearly erroneous, especially in cases where the referee's findings rest on disputed testimony or in part on respondent's credibility, demeanor, or sincerity." *In re Wentzell,* 656 N.W.2d at 405. This court must be "left with the definite and firm conviction that a mistake has been made" in order to come to the conclusion that a referee's findings

are clearly erroneous. *Id.* (quoting *In re Strid,* 551 N.W.2d 212, 215 (Minn.1996)).

"Allegations of professional misconduct must be proven by 'full, clear and convincing evidence.'" *In re Gherity,* 673 N.W.2d 474, 480 (Minn.2004) (quoting *In re Ruhland,* 442 N.W.2d 783, 785 (Minn.1989)). The petition for disciplinary action in this case alleged that Rudawski violated Minn. R. Prof. Conduct 5.5(a) when he "practiced law during the period of January 23, 2003, through August 13, 2003, while he was on involuntary restricted status for failure to comply with CLE requirements." Rule 5.5(a) states that a lawyer shall not "practice law in a jurisdiction where to do so violates the regulation of the legal profession in that jurisdiction." This court regulates the legal profession in Minnesota. *See In re Crissey,* 645 N.W.2d 141, 143 (Minn.2002).

On January 23, 2003, this court ordered that Rudawski be "hereby placed on 'involuntary restricted status,' as defined in Rule 12 of the Rules of the Minnesota Board of Continuing Legal Education." Rule 12(B)(1) provides: "A lawyer [on restricted status] may not engage in the practice of law or represent any person or entity in any legal matter or proceedings within the State of Minnesota other than himself or herself." On August 13, 2003, this court reinstated Rudawski "to active status as an attorney licensed to practice law." Rudawski concedes that, during the time period from January 23 through August 13, 2003, he appeared in court many times on behalf of clients and drafted, filed, signed, and served "dozens of legal pleadings and memoranda." Rudawski nonetheless argues that the Director "has failed to prove by clear and convincing evidence that [Rudawski] violated any of the rules," and contests the referee's conclusion to the contrary.

We first address Rudawski's challenges to the referee's findings of fact and conclusion of law. With respect to finding 11, Rudawski contends that "he did not have any knowledge that he was on involuntary restricted status." He further contends that "In fact, he thought he was on active status." Having carefully reviewed the record, we are satisfied that there is ample evidentiary support for finding 11. Therefore, we conclude that finding 11 is not clearly erroneous. Notwithstanding Rudawski's argument that he had no knowledge that he was on involuntary restricted status and that Kautzer's letter of March 24, 2003, "never indicates that Jerome M. Rudawski was placed on involuntary restricted status," we reach the same conclusion with respect to finding number 12. As for Rudawski's contention with respect to findings 11 and 12 that he had no knowledge that he was on involuntary restricted status, we note that the contention is inconsistent with the record before us. There is no question that this court placed Rudawski on involuntary restricted status by order on January 23, 2003, and that he was not reinstated until this court's August 13, 2003, reinstatement order. Having been placed on involuntary restricted status by order from this court, Rudawski had to have known that to be reinstated an order of this court was required. Any belief on his part to the contrary was unreasonable.

Finding 13 involves an April 24, 2003, letter sent by Kautzer to Rudawski, which Rudawski contends he did not receive. Rudawski's challenge to finding 14 calls into question the referee's determination as to when Rudawski's affidavit of compliance was sent to the Board. Both of these findings are based on the referee's resolution of disputed testimony and credibility determinations. On this record, we are not "left with the definite and firm conviction that a mistake has been made." *See In re Wentzell*, 656 N.W.2d at 405. Moreover, in that the referee is in a better position, having been there to hear and see the witnesses, to resolve disputes with respect to the testimony at the hearing, and to make credibility determinations than this court is, we conclude that findings 13 and 14 are not clearly erroneous.

Finally, with respect to Rudawski's challenges to findings 18 and 19 and the referee's conclusion of law, we conclude that his denial "that he intentionally practiced law while on voluntary restricted status" is without merit. As noted above, Rudawski knew that this court's January 23, 2003, order placed him on involuntary restricted status. He makes no claim that he received an order from this court before this court's August 13, 2003, order reinstating his license to active status. Absent such an order, he had to have known that any practice of law on his part between January 23 and August 13, 2003, was unauthorized. On that basis, we conclude that the referee's findings of fact and the conclusions of law challenged by Rudawski are not clearly erroneous. We also conclude, on the record before us, that the Director has established by "full, clear, and convincing" evidence that Rudawski engaged in the unauthorized practice of law in violation of Rule 5.5(a).

Having determined that Rudawski violated Rule 5.5(a), we turn our attention to the appropriate discipline for Rudawski's misconduct. "The purpose of disciplinary sanctions for professional misconduct is not to punish the attorney, but rather 'to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys.'" *In re Vaught*, 693 N.W.2d 886, 890 (Minn.2005) (quoting *In re Oberhauser*, 679 N.W.2d 153, 159 (Minn.2004)). "Although a referee's recommendation for

discipline carries great weight, we have final responsibility for determining whether discipline is appropriate and, if so, the type of discipline to be imposed." *In re Edinger,* 700 N.W.2d 462, 467 (Minn.2005).

We consider four factors in determining the appropriate sanction: (1) the nature of the misconduct; (2) the cumulative weight of the violations of the rules of professional conduct; (3) the harm to the public; and (4) the harm to the legal profession. Disciplinary actions are imposed on a case-by-case basis after considering both aggravating and mitigating circumstances, as well as looking to similar cases for guidance.

*In re Vaught,* 693 N.W.2d at 890 (citation omitted).

In seeking a disciplinary sanction greater than that recommended by the referee, the Director relies on *In re Wertz,* 442 N.W.2d 781 (Minn.1989), and *In re Beman,* 451 N.W.2d 647 (Minn.1990). In *In re Wertz,* the attorney stipulated that she had knowingly practiced law for almost two years while on restricted status for failure to complete CLE credits. 442 N.W.2d at 781–82. She and the Director jointly recommended that she be suspended for 90 days and this court approved the recommendation. *Id.* at 782. In *In re Beman,* the attorney had practiced while on CLE restricted status for more than nine years. 451 N.W.2d at 647. The order in *In re Beman* is silent on whether Beman knew, reasonably should have known, or did not know that he had been practicing without a license. *Id.* After a hearing, Beman and the Director entered into a joint agreement recommending a minimum 180-day suspension. *Id.* at 647–48. In imposing a lesser suspension of 90 days, we wrote:

Since this is the first time the matter has come before the court and since there are no allegations of noncompliance resulting in any harm to the public,

the court has reduced the period of suspension to three months. The bar, however, is placed on notice that henceforth we shall consider noncompliance with CLE requirements to be a very serious matter and may well result in more stringent disciplinary sanctions being imposed.

*Id.* at 648.

In seeking a disciplinary sanction less severe than that recommended by the referee, Rudawski argues that his case is most closely analogous to *In re Quinn,* 605 N.W.2d 396 (Minn.2000). Quinn admitted that he had engaged in the unauthorized practice of law for over 16 years by practicing while on CLE restricted status and while suspended for nonpayment of attorney registration fees. *Id.* at 396. Quinn entered into a stipulation with the Director jointly recommending that Quinn be publicly reprimanded, placed on two years of unsupervised probation, and be required to pay $900 in costs. *Id.* This court "independently reviewed the file and approve[d] the jointly-recommended disposition." *Id.*

In that we conclude that some period of suspension is appropriate, but that the length of suspension recommended by the Director is greater than necessary to protect the public and the judicial system and to deter further misconduct by Rudawski as well as other attorneys, we adopt the recommendation of the referee and order that:

1. Rudawski is suspended from the practice of law for 60 days. The suspension, as ordered, shall commence 15 days after the date this opinion is filed. Rudawski may apply for reinstatement by filing an affidavit pursuant to Rule 18(f), RLPR.

2. Rudawski shall take and successfully pass the professional responsibility

portion of the Minnesota Bar Exam within one year of the date of this opinion.

3. Rudawski must comply in all respects with Rule 26, RLPR.

4. Rudawski shall pay to the Director the sum of $900 in costs and disbursements pursuant to Rule 24(a), RLPR.

So ordered.

GILDEA, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.